## A95A1195. OLUKOYA v. AMERICAN ASSOCIATION OF CAB COMPANIES, INC.
### (465 SE2d 715)

Pope, Presiding Judge.

Plaintiff Oluyole Pius Olukoya appeals the trial court's denial of his motion for partial summary judgment. Concluding that the trial court erred in denying the motion, we reverse.

Plaintiff operated a taxicab as an independent contractor for United Cab Company. Defendant American Association of Cab Companies, Inc. provided insurance coverage for a fee to taxicab owners who were associated with United and used its name on their taxicabs. AACCI also provided coverage to other companies and other individual taxicab owners in the Atlanta area. The record demonstrates that taxicab companies and individual owners/drivers would come to AACCI and negotiate policy conditions and the cost of coverage. AACCI would then require all registered taxicab owners to convey title in their vehicles jointly to AACCI. This was done because AACCI held a self-insurance certificate rather than a certificate authorizing it to write insurance for non-owned vehicles, and was necessary to enable AACCI to provide insurance coverage for the vehicles. See former OCGA § 40-9-101 (a) (1) (Michie 1991). After title was conveyed jointly to AACCI and the original owner, the original owner was instructed to take the new title to the Insurance Commissioner's office to have the vehicle added to AACCI's self-insurance plan. Thereafter, AACCI, in this case via United, collected a monthly insurance fee from the original owner and provided an insurance card for the vehicle. Upon termination of the insurance coverage, AACCI would reconvey its interest in the insured vehicle to the original owner.

Following a car accident, plaintiff sued AACCI and its president and majority shareholder, defendant Cheru Terefe, alleging that he was entitled to certain medical benefits under AACCI's self-insurance plan, and that AACCI had acted in bad faith and been stubbornly litigious in failing to provide the medical benefits to him. He further alleged that Terefe was personally liable to plaintiff for the benefits because Terefe had been the recipient of certain demand loans from AACCI, which left the company without sufficient assets to cover its obligations. Plaintiff later amended his complaint to include a State civil RICO claim wherein he alleged that the manner in which defendants sought to have third parties participate in AACCI's self-insurance plan constituted an illegal attempt to sell insurance without a license and that the scheme amounted to racketeering activity in that it constituted theft and was carried out in violation of the federal mail and wire fraud statutes. See OCGA §§ 16-14-3 (9) (A) (ix), (xxix) and 16-14-4; 18 USC §§ 1341 and 1343.

After defendants denied the material allegations of plaintiff's

complaint, plaintiff moved for partial summary judgment seeking a determination from the trial court that AACCI's self-insurance plan, as operated, constituted an illegal attempt to sell insurance, and as such could constitute one element of a prima facie RICO case because it could establish the predicate acts necessary to prove a pattern of racketeering activity as defined by OCGA § 16-14-3 (8). The trial court denied plaintiff's motion on the ground that it could not determine as a matter of law that operation of AACCI's self-insurance plan constituted an illegal scheme to sell insurance without a license. In his sole enumeration, plaintiff contends that the trial court erred in denying him partial summary judgment on the limited issue set forth above. We agree.

Under OCGA § 33-3-2 (a) "[n]o person shall act as an insurer and no insurer shall transact insurance in Georgia except as authorized by a subsisting certificate of authority granted to it by the Commissioner, except as to any transactions as are expressly otherwise provided for in this title." "Transacting insurance" is defined in OCGA § 33-1-2 (6) to include the solicitation, inducement, and effectuation of a contract of insurance. "Insurance" is defined as "a contract which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount of benefits upon determinable contingencies." OCGA § 33-1-2 (2). In addition to the above, "[n]o person shall act as . . . an agent . . . in this state unless such person first procures a license from the Commissioner [and] [n]o agent . . . shall solicit or take applications for, procure, or place for others any kind of insurance for which such agent or subagent is not then licensed and for which a certificate of authority is not currently on file with the Commissioner. . . ." See OCGA § 33-23-4 (a) and (b). Thus, in Georgia, it is illegal to act as an insurer or transact insurance without proper authority from the Insurance Commissioner, and it is illegal to sell insurance without an agent's license.

In this case, the record clearly demonstrates that defendants were transacting insurance business, as defined above, and it is undisputed that Terefe is not an authorized insurance agent. Therefore, the marketing of the plan to third parties for a fee must be considered illegal absent some statutory, regulatory or case authority to the contrary. We have found no such authority. Defendant's marketing of the plan was not authorized by the terms of AACCI's self-insurance certificate or by any other document obtained by AACCI from the Insurance Commissioner. The statute governing self-insurers at all times relevant to this case also did not authorize such a marketing scheme, nor did any of the Insurance Commissioner's regulations re-

lating to self-insurance. See former OCGA § 40-9-101 (Michie 1991).[1] See Automobile Self-Insurance Regulations, § 120-2-46.01 - .09. Although defendants contend that such a scheme is authorized by this Court's holdings in *Proctor v. Rapid Group*, 203 Ga. App. 232 (416 SE2d 774) (1992) and *Olukoya v. American Assn. of Cab Cos.*, 202 Ga. App. 251 (414 SE2d 275) (1991), a review of those cases demonstrates that this Court has never actually addressed the issue.

In light of the above, and absent any authority to the contrary, we conclude that defendants' marketing of AACCI's self-insurance plan to third parties, as a matter of law, constituted the illegal sale or transaction of insurance in this state without a license. Consequently, we hold that the trial court erred in denying plaintiff's motion for partial summary judgment on this sole issue. In so holding, we note that the illegal sale of insurance is not in and of itself a basis for a civil RICO action in this state, but it may serve as such if it was conducted in violation of federal mail and wire fraud statutes or if it is proven to have been a fraud amounting to theft committed against plaintiff. See OCGA §§ 16-14-3 (9) (A) (ix), (xxix) and 16-14-4; 18 USC §§ 1341 and 1343. The trier of fact must resolve these issues however.

*Judgment reversed. Beasley, C. J., and Ruffin, J., concur.*

DECIDED DECEMBER 4, 1995 —
RECONSIDERATION DENIED DECEMBER 19, 1995 —

*Hicks, Casey, Young & Barber, Mark A. Barber, Calabro & Jennette, Michael M. Calabro*, for appellant.
*Sidney L. Moore, Jr.*, for appellee.

---

[1] OCGA § 40-9-101 (as amended 1994) also does not authorize the marketing of a self-insurance plan to third parties. Moreover, it specifically prohibits the issuance of a self-insurance certificate to any taxicab owner who does not actually *operate* 25 or more taxicabs *registered* in its name. Id. at (3) (B).