A97A0511. COLLEGE PARK CABS, INC. et al. v. JUSTUS.
(488 SE2d 88)

RUFFIN, Judge.

Brenda Byars drove a taxicab for College Park Cabs, Inc. ("CPC"), which did business as "Day-N-Night Cab Company." On April 27, 1993, Byars' cab collided with Mildred Justus' car. Justus sued Byars and CPC for injuries she claimed resulted from the accident. A jury awarded Justus damages against both defendants, including $65,000 for pain and suffering. Byars and CPC appeal, claiming the trial court erred by rejecting Byars' statute of limitation defense and CPC's independent contractor defense. Both defendants also claim the trial court erred by admitting evidence of certain chiropractic expenses. For reasons which follow, we affirm.

1. In their first enumeration of error, Byars and CPC claim the trial court erred by admitting evidence showing Justus incurred $1,815 in charges for treatment with Mark Cotney, a chiropractor. These charges were for office visits, x-rays, and therapy consisting of electrical stimulation, ultrasound, and hot and cold applications. The defendants argued that these treatments were outside the scope of chiropractic care authorized by OCGA § 43-9-16 (b), which states in part: "Chiropractors who have complied with this chapter may also use *in conjunction with adjustments of the spinal structures* electrical therapeutic modalities which induce heat or electrical current beneath the skin, including therapeutic ultrasound, galvanism, microwave, diathermy and electromuscular stimulation." (Emphasis supplied.) Because Justus testified that Cotney performed no "chiropractic adjustments" or "manipulations" in connection with her therapy, the defendants contended Justus could not recover for these

expenses and sought to exclude the evidence of the bills. The trial court admitted the bills over objection. After considering this issue on motion for new trial, however, the court reversed its ruling and struck from the final judgment the amount representing the bills. Byars and CPC contend that the court's action was insufficient and that the admission of this evidence demands a new trial.

We find the trial court committed no error by admitting evidence of these expenses. Justus testified she received therapy from Cotney. Although she testified that Cotney performed no "adjustments" or "manipulations," Cotney testified to the contrary. Cotney testified that he used these therapies to relax his patient's muscles and increase her blood supply to the area and also performed "traction" on her upper and lower spine and "adjusted" her mid-back area "manually by hand and also with an activator . . . in the mid-cervical area." Cotney further testified that Justus' "first 10 visits were probably similar." The chiropractor identified his bills for these charges. Given this evidence, we cannot say these therapies were not given "in conjunction with adjustments" of Justus' spine. Therefore, the trial court did not err in admitting evidence of the charges. See OCGA § 24-7-9 (a) (evidence of a chiropractor's charges may be established by patient or "other person responsible for the care of the patient"). Although the trial court later determined these expenses should not have been awarded as damages, it correctly concluded the admission of this competent evidence did not require a new trial. See *Warren v. Ballard*, 266 Ga. 408, 410 (2) (467 SE2d 891) (1996) (medical bills are admissible to show extent of injury and resulting pain and suffering).

2. CPC contends the evidence presented at trial showed, as a matter of law, that Byars was an independent contractor for whose conduct CPC was not vicariously liable. The cab company appeals the trial court's denial of its motion for directed verdict made on this ground. "In determining whether the trial court erred by denying the motion for directed verdict, this court reviews and resolves the evidence and any doubts or ambiguities in favor of the verdict. A directed verdict is not authorized unless there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions[,] demands a certain verdict." (Citations and punctuation omitted.) *Pope v. Professional Funding Corp.*, 221 Ga. App. 552, 553 (1) (472 SE2d 116) (1996).

The chief test used to distinguish between an employee and an independent contractor is "whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract. With respect to the independent business requirement set

forth in the code section, the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego." (Citation and punctuation omitted.) *Loudermilk Enterprises v. Hurtig*, 214 Ga. App. 746, 747 (449 SE2d 141) (1994) (physical precedent only).

CPC's representative testified that Byars was not an employee and owned the cab herself; however, the vehicle was titled in CPC's name, no written contract designated Byars as an independent contractor, and the parties had no written lease or purchase arrangements regarding the vehicle. When asked about her relationship with CPC, Byars testified she was "just a driver for the company." When asked whether she was required to accept customers whom the CPC dispatcher requested she pick up, she stated, "[n]ot if you weren't working." Byars was unsure if her payments to CPC were in furtherance of a lease or were owed for some other reason. Although CPC's representative testified Byars was responsible for her own car repairs, she testified the cab company purchased new tires for her car.

This Court has, on numerous occasions, held taxicab drivers to be independent contractors. But each of those cases contained facts not shown by CPC in this case. For example, in *Loudermilk Enterprises*, supra, a written contract designating the company's drivers as independent contractors created a presumption of that relationship. Similarly, in *Hand v. Checker Cab Co.*, 216 Ga. App. 116 (453 SE2d 138) (1995), the defendants obtained summary judgment by producing documents which showed the cab company leased the cab to the driver on a week-to-week basis, gave the driver exclusive use of the vehicle, imposed no rules on the driver's operation of the car, and did not require the driver to accept dispatches. See also *Johnson v. City Wide Cab*, 205 Ga. App. 502, 503-504 (2) (422 SE2d 912) (1992), in which the denial of an agency relationship was not controverted by competent evidence.

This case is close to the hypothetical situation raised by the Court in *Clark v. Atlanta Veterans Transp.*, 113 Ga. App. 531, 533 (148 SE2d 921) (1966). Although the Court concluded in *Clark* that the taxi driver was not an "employee" because no evidence showed the employer owned the taxicab, it noted: "If there had been proof of ownership of the vehicle by the defendant there may have been sufficient circumstances to raise a jury question as to the driver's agency. . . ." (Emphasis omitted.) The Court held that proof of agency would require a showing that the defendant owned the vehicle and that the driver was the defendant's servant. Id. at 533-534. Here, the evidence could lead the jury to believe CPC owned and maintained the cab and that Byars, who was "just a driver for the company," was required to accept calls while she was on duty. See

*Kirk & Assoc. v. McClellan,* 214 Ga. App. 685, 688 (2) (448 SE2d 764) (1994) (where one is employed generally to perform services for another, jury may infer employer retained right of control even if that right was not exercised). This evidence requires us to defer to the jury's determination that Byars was the employee of CPC. See *Harper v. Samples,* 164 Ga. App. 511, 512 (1) (298 SE2d 29) (1982).

3. The complaint in this case was filed one week before the statute of limitation expired. Although Byars was not personally served with the plaintiff's complaint until 11 months later, the trial court found Justus had exercised due diligence in attempting to serve her. Byars enumerates this finding as error and claims the trial court abused its discretion in denying her motion to dismiss the complaint as untimely. We disagree.

At the time this suit was filed, Byars' last name was Huggins. The record shows that on the day the complaint was filed, Justus' court-appointed private process server attempted to serve Huggins at her last known address. Neighbors told the process server she had moved, but they did not know her new address. The process server asked the owner of CPC, Willard Dunson, if he knew where Huggins might be found; he said he did not. A "skip trace" returned a non-existent address in Atlanta. The court allowed Justus to serve Huggins by publication.

The process server ran additional skip trace searches in May, June, and August 1995 and also searched computer databases for her name, all to no avail. In September 1995, Justus' attorney deposed CPC employee Eddie Dunson, who stated he did not know where Huggins could be found. Additional skip trace and computer searches in October 1995 and January 1996 produced no new information. In March 1996, however, a driver's license check revealed that Huggins had renewed her license under the last name Byars, and the agent served her at that address.

Testimony showed that in June 1995, Huggins married Richard Byars, a CPC employee who had worked at the cab company for 12 years. Richard Byars stated that his wife "may have" spoken with Willard or Eddie Dunson prior to September 1995. Although he apparently knew the Dunsons were trying to contact her, he testified that his wife was "the type of person where she don't like, you know, too much information about herself to be give out [sic]." The process server testified that when he served Byars, she told him she was aware of the case, that she had been in contact with the cab company's attorney, and that the cab company had known where she was the entire time but "had just hoped the thing would blow over."

The trial court found that given the circumstances, including Byars' apparent attempts to avoid service and misinformation given Justus' attorney by the Dunsons, the actions taken to perfect service

showed due diligence. We cannot say the trial court abused its discretion. See *Starr v. Wimbush*, 201 Ga. App. 280, 281 (2) (410 SE2d 776) (1991).

4. CPC claims the evidence presented at trial was insufficient to support a finding that Byars was in the scope of her employment at the time of the accident. Although CPC moved for a directed verdict on the *independent contractor* issue, it asserted no grounds in its motion related to the scope of employment issue. Because it made no specific motion for directed verdict based on this ground, CPC has waived any alleged error. See *Grabowski v. Radiology Assoc.*, 181 Ga. App. 298, 299 (2) (352 SE2d 185) (1986).

5. In their final enumeration of error, Byars and CPC complain that the verdict was strongly against the weight of the evidence. We will not review this claim, as "[n]o court except the trial court is vested with the authority to grant a new trial on a matter relating to the weight of the evidence. [Cit.]" *Allstate Ins. Co. v. Brannon*, 214 Ga. App. 300, 304 (5) (447 SE2d 666) (1994).

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JUNE 18, 1997 —
RECONSIDERATION DENIED JUNE 26, 1997 —

*Sidney L. Moore, Jr.*, for appellants.
*Mullins & Whalen, Samuel H. Sullivan*, for appellee.