A01A0716. SEALS et al. v. HYGRADE DISTRIBUTION & DELIVERY SYSTEMS, INC.
(549 SE2d 412)

MIKELL, Judge.

Seals Enterprise Corporation ("SEC") and Hygrade Distribution & Delivery Systems, Inc. ("Hygrade") had a contractual relationship whereby SEC delivered freight for Hygrade, for which Hygrade paid SEC delivery commissions. SEC filed a complaint against Hygrade, alleging, among other things, that Hygrade wrongfully deducted SEC's insurance premiums from SEC's commissions. The parties filed cross-motions for summary judgment. The trial court granted Hygrade's motion, ruling that it was entitled to deduct the insurance premiums and to retain certain administrative fees. SEC and Ralph D. Seals, SEC's owner, appeal. We affirm.

---

"In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence."[1] To prevail at summary judgment under OCGA § 9-11-56 (c), the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[2]

Viewed most favorably to SEC, the evidence shows that from 1986 to 1998, SEC and Hygrade were parties to an Independent Trucking Agreement (the "Agreement") whereby SEC hauled freight for Hygrade and Hygrade paid SEC delivery commissions for all loads hauled.[3] The Agreement provided that SEC was an independent contractor.[4] As such, SEC was responsible for obtaining workers' compensation insurance for its employees.

Initially, SEC obtained its own workers' compensation insurance. Once the premiums became too expensive, however, SEC enrolled in Hygrade's voluntary group insurance plan. Seals executed a consent form dated August 25, 1995, which authorized Hygrade to withhold $405 per week from SEC's gross commissions.

The consent form listed the rates for four different types of insurance: occupational accident ($48.50 per week), which applied only to owners; partnership ($75 per week); fleet owner ($110 per week), which was the workers' compensation insurance; and active contractor and employee ($90 per week), which applied to contractors that owned and operated one truck. Hygrade deducted $405 per week from SEC's commissions for workers' compensation insurance for each of three drivers at $110 per week and for one full-time partner (either Ralph Seals or his son, Darrell Seals) at $75 per week.[5] Seals deposed that after a short time, the amount was decreased to $378, which covered workers' compensation insurance and occupational accident insurance for Ralph Seals at $48.50 per week.[6]

By affidavit, Jane Quan-Shau, Hygrade's vice-president of safety, compliance, and risk management, stated that the contractors were notified that Hygrade charged an administrative fee for the operation of the insurance plan that was built into the insurance

---

[1] (Citation and punctuation omitted.) *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).

[2] Id.

[3] SEC is a commercial trucking company and Hygrade is a common carrier authorized by the Interstate Commerce Commission to transport freight.

[4] The original contract, which was executed in 1986, is not included in the record. The second contract, which was signed in 1995, was attached to Seals' deposition. The contract that was attached to Seals' complaint is dated May 2, 1997.

[5] No additional premium was paid for the helpers who sometimes accompanied the drivers.

[6] By that time, Ralph Seals was no longer authorized to drive the trucks; thus, he no longer needed partnership insurance.

rates. The purpose of the fee was to offset the administrative costs Hygrade incurred to process the weekly settlement deduction, prepare the monthly reconciliation, and transmit the application and premiums to the insurance broker, Specialty Risk.[7]

The contractor's premiums were based upon a flat rate schedule. However, the portion of the premium that Hygrade received for its administrative fee varied with the cost of each contractor's insurance, which was dependent upon the state in which they were insured. Hygrade was able to offer a flat rate schedule because it absorbed the varying insurance costs among the different states. In other words, in states where the insurance was more expensive, Hygrade would receive a smaller fee, if any, than in those states where the insurance was less costly.

Quan-Shau deposed that the contractors paid Hygrade, then Hygrade paid Specialty Risk the cost of the premiums and Specialty Risk's commission. Specialty Risk then submitted the insurance premiums to the insurer, Reliance Insurance Company. Reliance issued the policy directly to the contractors.

On summary judgment, SEC argued that Hygrade wrongfully deducted $94,681.43 from its delivery commissions for insurance premiums. Further, SEC contended that 49 percent of that amount constituted a commission or profit, which Hygrade was not entitled to collect since it is not a licensed insurance broker. In response thereto and in its cross-motion for summary judgment, Hygrade argued that it had not profited from SEC's payment of the insurance premiums and that it was entitled to retain the administrative fee it charged for the costs it incurred to administer the policy. The trial court agreed.

1. In their first enumeration of error, appellants argue that the trial court erred because the consent form authorizing the deductions from SEC's gross commissions was void pursuant to OCGA § 33-23-4 (e), which prohibits any entity "other than a duly licensed adjuster, agent, subagent, or counselor" from accepting any commission.

Contrary to appellants' contention, Hygrade's administrative fee does not constitute a "commission," as the term is used in OCGA § 33-23-4 (e). Thus, OCGA § 33-23-4 (e) does not void the consent form.

OCGA § 33-23-1 provides a list of definitions for certain words used in Article 1 of Chapter 23 of Title 33.[8] It does not define "commission" as it is used in the article. "In the absence of words of limita-

---

[7] The broker involved when Seals enrolled in the program was the National Association of Independent Truckers.

[8] The Georgia Insurance Code is codified at OCGA § 33-1-1 et seq. Chapter 23 is entitled "Licensing of Agents, Agencies, Subagents, Counselors, and Adjusters." Article 1 of the chapter is entitled "Agents, Agencies, Subagents, Counselors, and Adjusters."

tion, words in a statute should be given their ordinary and everyday meaning."[9] Black's Law Dictionary (5th ed.) defines commission as

> [t]he recompense, compensation or reward of an agent, salesman, executor, trustee, receiver, factor, broker, or bailee, when the same is calculated as a percentage on the amount of his transactions or on the profit to the principal. [Cit.] Compensation to an administrator or other fiduciary for the faithful discharge of his duties.

In this case, Hygrade did not charge SEC a percentage of SEC's gross commissions to administer the insurance program. Instead, an administrative fee was built into each insurance rate. The amount of the administrative fee received by Hygrade varied. The evidence shows that in some instances, the insurance premiums paid to Reliance exceeded that paid to Hygrade, and in some instances, they were less.

SEC does not dispute that Hygrade completed all of the paperwork necessary for SEC's participation in the group plan. Yet, SEC argues, and wants us to conclude summarily, that 49 percent of the amount it tendered to Hygrade was profit or commission. "Allegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment."[10] Since SEC does not point to any evidence in the record that the fee charged by Hygrade constituted profit or commission, the trial court did not err in finding that OCGA § 33-23-4 (e) did not void the consent form.

In support of its position that the contract is void under OCGA § 33-23-4 (e), SEC relies on *Mgmt. Compensation Group v. United Security Employee Programs*,[11] *Berger & Washburne Ins. Agency v. Commercial Ins. Brokers*,[12] and *Olukoya v. American Assn. of Cab Cos.*[13] However, none of those decisions are apposite. Both *Mgmt. Compensation Group* and *Berger* involve disputes between insurance agencies in which one of the companies alleges that the other is not licensed and thus is not entitled to retain the insurance commissions. Since Hygrade is not contending that it is licensed to sell insurance and there is no evidence that Hygrade received commissions, these cases are not applicable.

In *Olukoya*, the plaintiff alleged that the defendant's self-

---

[9] (Citations and punctuation omitted.) *Mgmt. Compensation Group Southeast v. United Security Employee Programs*, 194 Ga. App. 99, 102 (2) (389 SE2d 525) (1989).

[10] (Citations and punctuation omitted.) *Johnson v. MARTA*, 230 Ga. App. 105, 107 (1) (495 SE2d 583) (1998).

[11] Supra.

[12] 204 Ga. App. 146 (418 SE2d 640) (1992).

[13] 219 Ga. App. 508 (465 SE2d 715) (1995).

insurance plan constituted an illegal attempt to sell insurance without a license.[14] We held that the defendant's actions, marketing its self-insurance plan to third parties, requiring them to convey title to their vehicles, and to pay an insurance fee for which the defendant would provide an insurance card, constituted transacting insurance without a license. *Olukoya* has no applicability to the instant case. Hygrade is not self-insured, nor did it sell insurance to its contractors. Also, Hygrade did not acquire an interest in its contractors' trucks in consideration for securing lower insurance premiums through Specialty Risk. Instead, the contractors received their insurance policies directly from Reliance. Hygrade simply charged the contractors for the costs it incurred to complete the monthly paperwork required to administer the program. Accordingly, *Olukoya* is inapposite.

2. SEC next argues that the trial court erred by denying its motion for partial summary judgment because Hygrade's fee constituted a profit, and by earning a profit, Hygrade voided the consent form. This argument has been addressed in Division 1 of this opinion. SEC also argues that even if Hygrade were entitled to collect a fee, OCGA § 33-23-1 (b) (7) limited the fee to five percent of the cost of the premiums. Again, we disagree.

OCGA § 33-23-1 (b) (7) provides, in relevant part:

> The definitions of agent, subagent, counselor, and adjuster . . . shall not be deemed to include: . . . under a group insurance plan, a person who serves the master policyholder of group insurance in administering the details of such insurance for the employees or debtors of the master policyholder or of a firm or corporation by which the person is employed and who does not receive insurance commissions for such service; provided, further, that an administration fee not exceeding 5 percent of the premiums collected paid by the insurer to the administration office shall not be construed to be an insurance commission.

In this case, there is no master policyholder. Instead, Reliance issues the policies directly to the contractors. Furthermore, by collecting the premiums, Hygrade is not performing a service for the insurer or otherwise employed by any entity involved in this case. Finally, Reliance does not pay Hygrade an administrative fee. Thus, OCGA § 33-23-1 (b) (7) does not limit Hygrade's administrative fee.

3. In its final enumeration of error, SEC contends that the trial court erred by granting summary judgment to Hygrade on its fiduci-

---

[14] Id.

ary duty claim.

SEC argues that Hygrade acted as its agent in the procurement of insurance; thus, it owed SEC a fiduciary duty to disclose the profits it made from SEC's insurance premiums. While we agree with the general premise that an agent is under a duty not to make a personal profit from the principal's business,[15] we do not find that the premise applies to this case.

SEC's sole argument in this regard is that Hygrade made a profit that it did not disclose to SEC. Even if we assume that Hygrade was SEC's agent, there is no evidence that Hygrade made a profit which it would have been required to disclose to SEC. Hygrade's contention that it used the administrative fee to defray its costs is undisputed. During his deposition, Seals admitted that Hygrade did all of the paperwork related to the insurance. Accordingly, since there is no evidence that Hygrade made a profit from SEC's premiums, this enumeration fails.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MAY 9, 2001 ▮▮▮▮▮▮▮▮

*Hughes & Kaplan, Robert W. Hughes, Jr.,* for appellants.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Ben L. Weinberg, Jr., Howard J. Russell, Adriane C. Yelton,* for appellee.

---

[15] OCGA § 10-6-25; *Jennette v. Nat. Community Dev. Svcs.,* 239 Ga. App. 221, 223-224 (2) (520 SE2d 231) (1999).