A03A1813. STONE et al. v. WILLIAMS GENERAL
CORPORATION.
(597 SE2d 456)

RUFFIN, Presiding Judge.

Williams General Corporation (Williams) sued three former employees, Thomas Stone, Scott Zortman, and David Sams, as well as Stone Cold Concerts, Inc. d/b/a Stone Cold Chemicals (Stone Cold) for, among other things, misappropriation of trade secrets and conspiracy to misappropriate. A jury found that Stone Cold, Stone and Zortman misappropriated Williams' trade secrets and conspired to misappropriate.[1] It also found that Stone Cold and Stone violated Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO) statute and conspired to violate the statute. The defendants appeal, arguing, among other things, that there was insufficient evidence to support the jury's verdict and that the trial court incorrectly instructed the jury. For reasons that follow, we affirm that there was sufficient evidence to support the jury's verdict, but we reverse as to the RICO claim since the trial court incorrectly instructed the jury regarding the burden of proof as to that claim.

---

[1] David Sams, who is not a party to this appeal, was also included in the verdict.

A judgment notwithstanding the verdict (j.n.o.v.) is properly granted only when

> there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion. Also, the grant or denial of a motion for new trial is a matter within the sound discretion of the trial court and will not be disturbed if there is any evidence to authorize it.[2]

Viewed in a light most favorable to the verdict, Williams is a family business that sells chemical products. Williams maintains three different categories of customer-related documentation: customer lists, "pink" sheets, and "white" sheets (also known as six-month sheets). The customer lists are maintained on a computer that is protected by a password. The computer is kept in a locked room to which salespeople have no access. The salespeople use "pink" sheets to record an order and to note vital information regarding the buyer, and they are not allowed to take "pink" sheets home with them. "White" sheets are also used to record detailed customer information. Salespeople are allowed to make sales calls from white sheets, but have to return the sheets to the managers, at which point the manager counts the sheets to make sure he or she receives all of them. As with the pink sheets, salespeople are not allowed to take white sheets out of the office. All salespeople are told upon hire that no documents are allowed to leave the building. Williams' vice-president testified that all three types of documentation would be difficult for competitors to duplicate and would give a significant advantage to competitors.

Williams also requires its salespeople to sign a restrictive covenant agreeing that they will not for a period of one year after termination or resignation contact any customer that the employee had contacted while with the company, or give the name of these customers to any other individual or company. Stone, Zortman, and Sams each signed such an agreement.

Stone was terminated from Williams in 1995 and started a company called Stone Cold Concerts to promote musical concerts. Pink sheets were missing from Stone's desk when he left Williams. Shortly thereafter, he and the other founders of Stone Cold decided to go into chemical sales. Stone Cold Concerts became known as Stone

---

[2] (Citations and punctuation omitted.) *Professional Consulting Svcs. v. Ibrahim*, 206 Ga. App. 663, 665 (426 SE2d 376) (1992).

Cold Chemicals and started doing business in 1996. Zortman and Sams left Williams within several months of each other (in late 1997) to work for Stone at Stone Cold. Pink sheets were missing from the desks of both Zortman and Sams when they left Williams.

One of Williams' managers testified that on the day Zortman left Williams, he saw Zortman copying information from pink sheets. Zortman denied taking any documents or copying any information, and he acknowledged that salespeople were not allowed to take customer information off the premises. His then girlfriend testified, however, that he had told her that he had taken customer information from Williams.

Stone also denied having pink sheets, white sheets, or customer lists of Williams after he left Williams. Sams did not testify.

Stone Cold made sales to 70 customers of Williams in 1996 and to 92 customers of Williams in 1997. Stone and Zortman testified that they called former customers from memory.

At trial, Williams submitted several charge requests regarding RICO, including one which stated that the burden of proof on a RICO claim is the preponderance of the evidence. The trial court charged the jury that "[t]he plaintiff has to prove its RICO claims by a preponderance of the evidence." Following the charge to the jury, defendants objected that the correct standard is clear and convincing evidence. The trial court noted the objection, but did not correct the charge.

1. The defendants argue that the trial court erred in denying their motion for new trial or in the alternative for a j.n.o.v. because there is insufficient evidence to support a claim of misappropriation of trade secrets. We disagree.

Under Georgia law, trade secrets are defined as

> information, without regard to form, including, but not limited to . . . a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information: (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[3]

The defendants argue that Williams' customer documentation does not qualify for trade secret protection because it was "freely

---

[3] OCGA § 10-1-761 (4).

available and commonly known" and Williams took no steps to protect it. The record shows otherwise. Williams' vice-president testified regarding the lengths Williams went to, above and beyond its restrictive covenant, to protect its customer documentation, including restricted access to the documents and instructing employees not to leave the building with them. He also testified that the customer information would be difficult for competitors to duplicate and would give a significant advantage to competitors if obtained. Accordingly, we find that there is sufficient evidence in the record to support the jury's verdict and that the trial court did not err in denying the defendants' motion.[4]

The defendants also argue that because Williams did not have a written policy regarding trade secrets, they are entitled to judgment pursuant to our decision in *Equifax Svcs. v. Examination Mgmt. Svcs.*[5] We disagree.

Pretermitting whether Williams' restrictive covenants (which are not at issue here) were valid and enforceable, we specifically found in *Equifax* that an action for misappropriation of trade secrets is not dependent on the existence of a written contract.[6] Equifax relied exclusively on a confidentiality agreement, an agreement which we found unenforceable as written, to establish that reasonable steps were taken to maintain secrecy. In the present case, however, Williams has set forth numerous examples of steps, other than its confidentiality agreement, that it has taken to maintain the secrecy of its customer documentation. Accordingly, *Equifax* does not dictate a different result here.

2. The defendants argue that the trial court's charge on trade secrets authorized the jury to find a misappropriation of an oral or intangible trade secret, contrary to *Avnet, Inc. v. Wyle Laboratories.*[7] Again, we disagree.

In *Avnet*, our Supreme Court held that an individual is free to use any information he can remember from his former employment, including trade secrets, in the absence of a valid and enforceable covenant. The defendants in this case argue that they merely called customers that they could remember and that thus under *Avnet* there is no misappropriation. However, with respect to the charge at issue,

---

[4] Cf. *Tronitec v. Shealy*, 249 Ga. App. 442, 446 (547 SE2d 749) (2001). The defendants also argue (citing no case law) that Williams, in a prior, unrelated case, filed a customer list with the Superior Court of Decatur County, and that such action shows a complete failure on Williams' part to protect any alleged trade secrets. We disagree, as we have previously held that the filing of trade secrets with a governmental entity does not cause a trade secret to lose its protected status. See *Tronitec*, supra at 450-451.

[5] 216 Ga. App. 35 (453 SE2d 488) (1994).

[6] Id. at 40 (2).

[7] 263 Ga. 615 (437 SE2d 302) (1993).

the record indicates that the court, with agreement of counsel, specifically charged the jury that "[a] trade secret must be in tangible form such as a written document." Viewed as a whole, we find that the court properly instructed the jury on applicable law, and accordingly, we find no error.[8]

3. The defendants, citing *Stargate Software Intl. v. Rumph*,[9] further argue that the trial court erred in failing to grant a new trial or in the alternative a j.n.o.v. because there is insufficient evidence that the defendants committed two predicate acts of misappropriating trade secrets. In support of this argument, the defendants again contend that Williams' customer information does not constitute a trade secret. For the reasons set forth in Division 1, we disagree.

As for the defendants' reliance on *Stargate*, we find it misplaced. In *Stargate*, the plaintiff contended that its RICO claims should have survived summary judgment because the defendants committed two or more predicate acts of conversion, computer theft or computer trespass by stealing computers on one day and then, at a separate time, using and altering the information on them. We found that the defendants' theft and later use of the computers and other data constituted a single transaction and thus the court did not err in granting summary judgment on the RICO claim.

Here, on the other hand, there was evidence of multiple thefts over time by more than one individual, and the court charged the jury as to five different crimes that could, based on the evidence, constitute predicate acts, including theft by taking, theft by deception, receipt of stolen property, and theft by conversion. It also charged the jury that a "pattern of racketeering activity" means engaging in at least two acts of racketeering activity in furtherance of one or more incidents. Because there was evidence to support the jury's verdict regarding RICO, we find no error.[10]

4. Notwithstanding our finding that there was sufficient evidence regarding a violation of RICO, we reverse the jury's decision regarding RICO and conspiracy to commit RICO because the court incorrectly charged the jury regarding the burden of proof as to these claims. Under Georgia law, Williams must introduce clear and convincing evidence regarding the necessary predicate acts.[11] However, the court improperly charged the jury that the standard was preponderance of the evidence. An incorrect charge on the burden of proof regarding key issues in the case is a substantial error that is harmful

---

[8] See id.

[9] 224 Ga. App. 873 (482 SE2d 498) (1997).

[10] See *Tronitec*, supra at 446.

[11] See *Blanton v. Bank of America*, 256 Ga. App. 103, 105 (567 SE2d 313) (2002).

as a matter of law and requires reversal.[12]

5. Given our decision in Division 4, the remaining allegation of error is moot.

*Judgment affirmed in part and reversed in part. Smith, C. J., and Miller, J., concur.*

DECIDED MARCH 8, 2004 —

RECONSIDERATION DENIED MARCH 29, 2004 —

*Dwyer & White, William W. White*, for appellants.

*Andrew, Merritt, Reilly & Smith, Paul E. Andrew*, for appellee.

*William S. Stone, Boone & Stone, Arthur W. Leach, Smolar, Sakes & Goodhart, Antoinette D. Johnson*, amici curiae.

---

[12] See *Marek Interior Systems v. White*, 230 Ga. App. 518, 521 (3) (496 SE2d 749) (1998).