A07A1785, A07A1786. AMERICAN ASSOCIATION OF CAB COMPANIES, INC. et al. v. PARHAM; and vice versa.
(661 SE2d 161)

PHIPPS, Judge.

Thomas Parham, Jr., was injured in 1992 when the taxicab in which he was a passenger collided with another vehicle. He filed a personal injury action against the driver, Harold Davis,[1] American Cab Company ("ACC"), and The American Association of Cab

---

[1] Davis died before trial. Judgment was entered against his estate, which does not appeal.

Companies, Inc. ("AACCI"), among others. Under a management agreement, ACC operated the cabs and AACCI was responsible for financial arrangements, including self-insurance. Parham also asserted a claim against ACC and AACCI ("the cab companies") under the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"), OCGA § 16-14-1 et seq. The claims were bifurcated at trial. The jury returned a verdict on the personal injury claim in the amount of $868,762.93, including $84,387.93 for medical bills and $784,375 for pain and suffering. The jury also found that the corporate veil between the cab companies should be pierced, a finding not at issue in this appeal. The jury returned a defense verdict on the RICO claim. In Case No. A07A1785, the cab companies appeal from the judgment entered on the personal injury verdict; in Case No. A07A1786, Parham cross-appeals from the judgment entered on the RICO defense verdict.[2] We affirm in Case No. A07A1785, but reverse and remand for a new trial in Case No. A07A1786 because the trial court imposed an improperly high burden of proof on Parham's RICO claim and because that error was not harmless.

## Case No. A07A1785

1. The cab companies contend that the trial court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict (j.n.o.v.) because the evidence presented at trial demanded a finding that Davis was not an employee of the cab companies. We disagree.

"The standard for granting motions for directed verdict and for j.n.o.v. is the same. They may be granted only when no conflict exists in the evidence and the evidence presented, with all reasonable inferences therefrom, demands a particular verdict."[3] On appellate review of the denial of either motion, we construe the evidence in the light most favorable to the verdict and resolve any doubts or ambiguities in favor of the verdict.[4]

Construed in favor of the verdict, the evidence shows that in 1991, Davis met Morteza Hafezalkotob and agreed to lease a taxicab for $250 per week. Davis testified that he and Hafezalkotob met with Konjit Terefe/Bekele, an officer of both ACC and AACCI. Terefe/Bekele instructed Davis to sign papers indicating that the cab was insured by the companies and that Davis would drive the taxicab on

---

[2] On July 6, 2007, we ordered Parham to supplement the record in the cross-appeal within 40 days, and the record was duly supplemented on August 14. The cab companies' motions to dismiss the cross-appeal are denied because Parham timely supplemented the record.

[3] *Wynn v. City of Warner Robins*, 279 Ga. App. 42, 43 (1) (630 SE2d 574) (2006).

[4] Id.; *College Park Cabs v. Justus*, 227 Ga. App. 66, 67 (2) (488 SE2d 88) (1997).

behalf of Hafezalkotob, who was leasing the cab to Davis. The vehicle already bore the ACC insignia and sign. Davis was required to show Terefe/Bekele his driver's license, taxicab permit, and driving history.[5] Terefe/Bekele also told Davis to report any incidents to her. Hafezalkotob paid Davis's stand dues of $153 per month to ACC.

The cab companies objected to a charge on joint venture on the ground that it was not authorized by the evidence. The trial court overruled the objection. The cab companies later objected to the verdict form on the same ground. The jury found the cab companies liable under alternative theories of "principal/agency, respondeat superior, or joint venture."

"A charge unauthorized by the evidence, which injects into the case issues not made by the pleadings or evidence, is presumed to be harmful to the losing party, and such a charge is grounds for new trial unless it is apparent that the jury could not have been misled by it."[6] We therefore consider whether the evidence supported the submission of the question whether Davis was an employee of the cab companies to the jury.

"As a general rule, the doctrine of respondeat superior applies only where the principal retains the right to control the time, manner, and method of employment of the agent."[7] To prove that a taxicab driver was operating a vehicle in the course of the employer's business and within the scope of the driver's employment, the plaintiff must show both that the employer owned the vehicle and that the driver was the owner's employee.[8]

The evidence supports the jury's conclusion that the cab companies owned the vehicle driven by Davis. At the time Parham was injured, that vehicle was co-titled in the names of Hafezalkotob and AACCI and bore the ACC insignia. Evidence also showed that ACC checked Davis's driving record and license and paid for Davis's insurance, and the jury found that the corporate veil between ACC and AACCI should be pierced. Davis also testified that he could not have driven the cab without a permit listing him as an ACC driver.

The evidence also supports the jury's conclusion that ACC exerted some control over the time, manner and method of Davis's

---

[5] Davis's driver's license had been suspended for excessive points when the collision occurred, but he testified that he did not receive a notice informing him of that fact until after the accident.

[6] *Valdez v. Power Indus. Consultants*, 215 Ga. App. 444, 446 (1) (451 SE2d 87) (1994).

[7] *Logan v. American Bankers &c. Co.*, 168 Ga. App. 647, 650 (2) (310 SE2d 263) (1983) (citations omitted).

[8] See *Clark v. Atlanta Veterans Transp.*, 113 Ga. App. 531, 533-534 (148 SE2d 921) (1966).

employment. Davis testified that "if [the ACC dispatcher] would call me, I would answer him," and was further examined as follows:

> Q: And you would go pick up a passenger they may obtain —
> A: If they had something for me; but nine times out of ten, they didn't call me for no passenger or anything like that.
> Q: Most of the passengers, you found on your own?
> A: I picked up on my own.
> Q: When he would call you for a passenger and say, I want you to pick this passenger up, did you have any kind of agreement where you would keep up with that?
> A: That they dispatch to me?
> Q: Yes, sir.
> A: Well, if they did, yes, I would keep up with them, yes.

As the dissent correctly points out, a taxicab company cannot be held liable for a driver's tort where there is *no* evidence to support a conclusion that the company controlled the manner in which the driver operates the taxi.[9] Here, however, Davis's testimony permits the conclusion that *whenever* ACC called Davis with a passenger, he picked that passenger up and that Davis was thus working as the companies' agent and under their control.[10]

2. The cab companies also argue that the trial court erred when it instructed the jury on joint venture because the evidence did not authorize such a charge. We disagree.

As the cab companies concede, the cab companies' control over Davis's operation of the taxi is an element common to all three of Parham's theories of the case, with "mutual control" being essential to any finding of a joint venture between Davis and the companies. "A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control."[11] As we have held in Division 1, evidence supported a finding that the cab companies exercised some control

---

[9] " '[T]he fact that the taxicab company relayed messages when someone called in for a taxi would not alone be sufficient to establish that the driver was the taxicab company's agent.' " *Metro Taxi v. Brackett*, 273 Ga. App. 122, 123 (614 SE2d 232) (2005), quoting *Red Top Cab Co. v. Hyder*, 130 Ga. App. 870, 871 (204 SE2d 814) (1974) (punctuation omitted).

[10] See *College Park Cabs*, supra at 68-69 (2) (evidence including that the cab was titled in the company's name, that no written contract designated the driver as an independent contractor, and that the driver was required to accept customers referred by the company dispatcher was sufficient to authorize a finding that the driver was an employee); compare *Metro Taxi*, supra (reversing jury award for plaintiff when "there was *no* evidence that the [cab company] drivers were required . . . to accept the [dispatcher's] calls and provide taxi services to the callers") (emphasis supplied).

[11] *Rossi v. Oxley*, 269 Ga. 82, 83 (1) (495 SE2d 39) (1998) (punctuation and footnote omitted).

over the manner in which Davis performed his work. The same evidence also supports a finding that Davis himself exercised some control over the manner in which he performed that work.[12] This contention lacks merit.

### Case No. A07A1786

3. In the cross-appeal, Parham argues that the trial court erred when it instructed the jury that he was required to prove his Georgia RICO claims by clear and convincing evidence and that he deserves a new trial on these claims. We agree.

(a) At the time of Parham's trial, a line of cases originating in *Simpson Consulting v. Barclays Bank PLC*[13] required a plaintiff to prove RICO predicate acts by clear and convincing evidence. The charge was therefore correct when given.[14] Two months after the trial in this case, however, in *Williams Gen. Corp. v. Stone*,[15] our Supreme Court overruled *Simpson Consulting* and held that the predicate acts necessary to support a civil RICO claim need only be established by a preponderance of the evidence.[16] We therefore consider whether we should apply *Williams* and its RICO preponderance standard retroactively to this case.

In *Flewellen v. Atlanta Cas. Co.*,[17] our Supreme Court laid out a three-part test as to whether an appellate decision establishing a new rule of law should be applied retroactively or nonretroactively in a civil case. Under the *Flewellen* test, we are bound to

(1) Consider whether the decision to be applied nonretroactively established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed[;]

(2) Balance . . . the merits and demerits in each case by looking to the prior history of the rule in question, its

---

[12] See *Southern Pine Products v. Waller*, 122 Ga. App. 288, 288-289 (176 SE2d 631) (1970) (affirming denial of summary judgment where issue of fact remained concerning existence of joint venture between company and partnership where company manager supervised and had the authority to stop partnership's lumber harvesting operations).

[13] 227 Ga. App. 648, 655-656 (4) (490 SE2d 184) (1997) (physical precedent only).

[14] *Stone v. Williams Gen. Corp.*, 266 Ga. App. 608, 612 (4) (597 SE2d 456) (2004), rev'd, *Williams Gen. Corp. v. Stone*, 279 Ga. 428 (614 SE2d 758) (2005).

[15] Supra.

[16] *Williams Gen. Corp.*, supra at 431, overruling *Simpson Consulting* as well as *Blanton v. Bank of America*, 256 Ga. App. 103, 105 (567 SE2d 313) (2002); *In re Copelan*, 250 Ga. App. 856 (553 SE2d 278) (2001); and *Tronitec, Inc. v. Shealy*, 249 Ga. App. 442, 448 (6) (547 SE2d 749) (2001).

[17] 250 Ga. 709, 712 (3) (300 SE2d 673) (1983).

purpose and effect, and whether retrospective operation would further or retard its operation[; and]

(3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity.[18]

The record shows that at the charge conference, Parham pointed out that *Simpson Consulting* appeared as physical precedent only and was not implicitly adopted by this Court for nearly four years.[19] Parham also observed that *Simpson Consulting* had been critiqued by a Georgia federal court, which examined federal RICO case law and the history of Georgia RICO before finding a likelihood "that the Georgia Supreme Court would reject *Simpson*'s reasoning."[20] Indeed, shortly after the trial in this case, *Williams Gen. Corp.* appeared. In that decision, our Supreme Court pointed to the legion of federal cases holding that RICO plaintiffs need only prove their case by a preponderance of the evidence, highlighted the General Assembly's mandate "to liberally construe [Georgia RICO] to effectuate its remedial purposes," and held that the trial court had not erred when it instructed the jury considering a civil RICO claim under a preponderance standard.[21] Under these circumstances — where Parham objected to the instruction and pointed out its tenuous claim to authority, where the Supreme Court of Georgia ratified Parham's position only two months afterward, and where both sides here have the opportunity to make their cases at a new trial conducted under the proper burden of proof — we apply the law retroactively.[22]

(b) When an instruction imposes an erroneously high burden of proof on a civil plaintiff, thereby shifting that burden on a primary issue, a new trial is the only remedy, even if the plaintiff obtained a judgment at the previous trial.[23] We conclude that the trial court's instruction imposing a "clear and convincing" standard of proof on

---

[18] Id.

[19] See *Tronitec*, supra.

[20] *Southern Intermodal Logistics v. D. J. Powers Co.*, 10 FSupp.2d 1337, 1347 (III) (A) (S.D. Ga. 1998).

[21] *Williams Gen. Corp.*, supra at 430-431.

[22] See *Fender v. Adams Exterminators*, 218 Ga. App. 62, 63 (2) (460 SE2d 528) (1995) ("[r]etroactive application of judicial decisions is the usual rule in all civil cases").

[23] See *Pendarvis Constr. Corp. v. Cobb County-Marietta Water Auth.*, 239 Ga. App. 14, 16-17 (2) (520 SE2d 530) (1999) (because erroneous charge on burden of proof in condemnation action went to the primary issue of the case, it was prejudicial, and a new trial was required); see also OCGA § 5-5-24 (c) (appellate courts review erroneous charges "where there has been

Parham's civil RICO claims was erroneous and harmful as a matter of law.[24]

(c) The cab companies resist this conclusion by arguing that even if the trial court imposed an erroneously high standard of proof on Parham's RICO claims, any error was harmless because Parham cannot show that the cab companies proximately caused him injury. We disagree.

OCGA § 16-14-6 (c) provides that a person who is injured "by reason of" a party's violation of RICO "shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages." As the United States Supreme Court has held concerning the analogous federal statute, a plaintiff seeking to prove injury "by reason of" a RICO predicate act must show that the predicate act was the proximate cause of his injury.[25]

In the second part of the bifurcated trial, Parham alleged that the cab companies engaged in a pattern of racketeering activity through two predicate acts: theft by deception and insurance fraud.[26] The cab companies moved for directed verdict on the issue of causation, arguing that there was no evidence that any RICO violation was the proximate cause of Parham's injuries. Parham's response was that (i) the cab companies' predicate acts had caused his personal injury by allowing Davis to drive an underinsured cab; and (ii) those same predicate acts had injured him by depriving him of the means to satisfy a judgment against them. We address these contentions in turn.

(i) We reject Parham's assertion that the cab companies' fraudulent acts, including misrepresentations concerning their financial condition, could amount to a proximate cause of his personal injury. In fact, such misrepresentations could amount only to "but-for" causation: Davis would not have received a permitted cab and would not have been driving Parham "but for" the cab companies' misrepresentations, but the proximate cause of his injuries was Davis's negligent driving, not those misrepresentations.[27]

---

a substantial error in the charge which was harmful as a matter of law, regardless of whether such objection was made . . . or not").

[24] Id.

[25] See *Anza v. Ideal Steel Supply Corp.*, 547 U. S. 451, 456-457 (II) (126 SC 1991, 164 LE2d 720) (2006), construing 18 USC § 1964 (c).

[26] See *Olukoya v. American Assn. of Cab Cos.*, 219 Ga. App. 508, 510 (465 SE2d 715) (1995) ("[D]efendants' marketing of AACCI's self-insurance plan to third parties, as a matter of law, constituted the illegal sale or transaction of insurance in this state without a license. . . . [T]he illegal sale of insurance is not in and of itself a basis for a civil RICO action . . . , but it may serve as such . . . if it is proven to have been a fraud amounting to theft committed against plaintiff [taxicab driver].") (citations omitted).

[27] See id. (cab companies' illegal insurance scheme may serve as the basis for a civil RICO claim only if it is proven to be a "fraud amounting to theft" from the plaintiff driver); see also

(ii) We agree, however, that a jury could find that the cab companies' misrepresentations of their financial condition proximately caused Parham harm by compromising his ability to satisfy a judgment against them. As Parham pointed out to the trial court, the evidence before the jury included a cease and desist order[28] issued by the Insurance Commissioner on February 7, 1997. In that order, the Commissioner found that as of December 31, 1995, AACCI "did not have the ability to provide coverages and benefits substantially equivalent to those offered by a policy of vehicle insurance" and had a net worth of only $75,529, well under the $400,000 minimum required of self-insurers. On the basis of this and other findings of fact, the Commissioner concluded that AACCI "does not possess and will not continue to possess the ability to pay judgments or valid claims," which inability constituted "grounds for the revocation of [AACCI's] certificate for self-insurance."

The judgment in Parham's personal injury action against the cab companies was entered in May 2005, well after the Insurance Commissioner's 1997 order finding them incapable of satisfying a judgment. The record therefore contains some evidence that Parham will be unable to collect his 2005 judgment against the cab companies in the amount of $868,762.93 as a proximate result of their RICO predicate acts.[29] We therefore reverse the trial court's entry of judgment for the cab companies on Parham's RICO claims and grant a new trial as to them.

*Judgment affirmed in Case No. A07A1785. Judgment reversed and case remanded in Case No. A07A1786. Blackburn, P. J., Smith, P. J., Ruffin and Bernes, JJ., concur. Johnson, P. J., and Mikell, J., dissent.*

---

*Anza*, supra at 457-458 (II) (where a state tax authority was the victim of RICO defendants' acts of tax evasion resulting in defendants' inordinately low prices, plaintiff competitors could not show that those acts were the proximate cause of their economic injuries).

[28] See OCGA § 33-2-24 (a) (granting the Insurance Commissioner the discretion "in the public interest or for the protection of policyholders or the citizens of this state" to issue an order "prohibiting [a] person from continuing [an] act, practice, or transaction").

[29] See *Liberty Mut. Ins. Co. v. Blessinger*, 2007 Dist. LEXIS 21781 (E.D. N.Y. 2007) (denying defendant taxi companies' motion to dismiss insurer's federal RICO claim when the insurer's complaint alleged that the defendants committed a series of fraudulent misrepresentations in order to obtain insurance on their taxi and livery cars); *Williams v. Mohawk Indus.*, 465 F3d 1277, 1294 (III) (B) (11th Cir. 2006) (employees alleged sufficient facts concerning employer's harboring and employment of illegal workers to make out a claim of injury "by reason of" the employer's predicate acts; employees' complaint was "neither indirect nor too remote to satisfy Georgia's proximate-cause requirement under state-law RICO").

MIKELL, Judge, dissenting.

I respectfully dissent from the majority's affirmance of the judgment entered on the jury's verdict in Case No. A07A1785 because I believe that there is no evidence that Davis was an agent or employee of the cab companies. Because a reversal of the judgment in the main claim would render the RICO claim moot, I would dismiss the cross-appeal. Accordingly, I also dissent from the majority's decision to reverse and remand the RICO claim for a new trial.

1. As the majority correctly points out, "the doctrine of respondeat superior applies only where the principal retains the right to control the time, manner, and method of employment of the agent."[30] Especially pertinent here, in order to prove that a taxicab driver was operating a vehicle in the course of the owner's business and within the scope of the driver's employment, the plaintiff must prove both that the employer owned the vehicle and that the driver was the owner's employee.[31] In the case at bar, the taxicab was co-titled in AACCI's and Hafezalkotob's names and bore the ACC insignia, thus providing sufficient evidence of ownership by the cab companies. But even construed in the light most favorable to the verdict, the evidence showed that neither cab defendant exercised control over the time, manner, or method of Davis's operation of the taxicab.

Davis testified that although ACC had a dispatcher, Davis never called him to obtain passengers. If the dispatcher called, Davis would answer, but he testified that "nine times out of ten, they didn't call me for no passenger." Instead, Davis picked up fares on his own. Davis did not pay ACC a fee for picking up any passengers, and he never paid any money directly to either ACC or AACCI. According to Davis, Hafezalkotob paid stand dues and insurance coverage. Davis did not know the amount of insurance coverage because the "only thing [he] was doing was leasing the cab." Davis also testified that when he and Hafezalkotob met with Terefe/Bekele, she gave Davis no instructions other than to report "if anything happened to the cab." The only other witness who testified on this issue was Cheru Terefe, Terefe/Bekele's husband, who was, at various times, president of both AACCI and ACC. According to Terefe, ACC did not pay its drivers any salary or commission, did not exercise any control over when or where a driver worked, and did not tell the driver what to do on a daily basis. Terefe testified that Davis never paid any money to ACC; rather, Hafezalkotob paid the stand dues of $153 per

---

[30] (Citations omitted.) *Logan v. American Bankers &c. Co.*, 168 Ga. App. 647, 650 (2) (310 SE2d 263) (1983).

[31] *Clark v. Atlanta Veterans Transp.*, 113 Ga. App. 531, 533-534 (148 SE2d 921) (1966).

month to ACC. Terefe further testified that ACC did not hire Davis, either as an employee or as an independent contractor.

The evidence thus demonstrates that Davis leased the taxicab from a third party and paid fees to that third party, not to the cab companies. Davis picked up whomever he wished and did not depend on the ACC dispatcher for passengers. Contrary to the majority's conclusion, I do not believe that evidence that Davis chose to pick up passengers dispatched through ACC supports a finding that ACC controlled or supervised him. Rather, I believe that the evidence shows conclusively that ACC permitted Davis to drive the taxicab but imposed no rules on the manner in which he operated his business. For these reasons, I believe that this case is controlled by precedents such as *Red Top Cab Co. v. Hyder*,[32] *Hand v. Checker Cab Co.*,[33] and *Metro Taxi v. Brackett*.[34] In *Red Top Cab Co.*, evidence of the cab company's ownership of the taxicab was held insufficient to create a jury issue where the uncontradicted evidence showed that the driver leased the vehicle from the company and the company had no control over its operation.[35] In *Hand*, summary judgment was affirmed based on evidence showing that the cab company leased the cab to the driver on a week-to-week basis, gave the driver exclusive use of the vehicle, imposed no rules on the driver's operation of the taxicab, and did not require the driver to accept dispatches.[36] In *Metro Taxi*, relied upon by ACC and AACCI in their motion for j.n.o.v., a judgment entered on the verdict was reversed where the company owned the taxicab and leased it to the driver for a daily fee; the driver was not required to accept calls from the dispatcher; and the company exercised no control over where the driver operated.[37] In my view, these cases are apposite and controlling.

Cases in which the evidence has been found sufficient to support a verdict stand in stark contrast to the three precedents discussed above. In *Harper v. Samples*,[38] for example, the cab company owned the cab, and a supervisor from the company came to the scene of the collision in response to the taxicab driver's call, authorizing the jury to find that the driver was an employee of the company and acting within the scope of his employment at the time of the collision.[39]

---

[32] 130 Ga. App. 870 (204 SE2d 814) (1974).

[33] 216 Ga. App. 116 (453 SE2d 138) (1995).

[34] 273 Ga. App. 122 (614 SE2d 232) (2005).

[35] *Red Top Cab Co.*, supra.

[36] *Hand*, supra.

[37] *Metro Taxi*, supra at 123. See also *Johnson v. City Wide Cab*, 205 Ga. App. 502, 504 (2) (422 SE2d 912) (1992) (insignia on taxicab is not sufficient to support a verdict).

[38] 164 Ga. App. 511 (298 SE2d 29) (1982).

[39] Id. at 512 (1).

Similarly, in *College Park Cabs v. Justus*,[40] evidence that the company owned the taxicab, combined with the driver's testimony that she was "just a driver for the company" and was required to accept calls from the company dispatcher while she was on duty, was sufficient to authorize a finding that the driver was the company's employee.[41] The evidence of employment presented in *Harper* and *College Park Cabs* is lacking in the case at bar. The evidence does not permit an inference that Davis was required to accept calls from the dispatcher.

Accordingly, I believe that the trial court erred in denying the cab companies' motions for directed verdict and j.n.o.v. because the evidence presented at trial demanded a finding that Davis was neither an agent nor an employee of the cab companies, such that they could not be held vicariously liable for Davis's conduct.

2. For the reasons stated above, I do not believe there is evidence to support a finding that Davis and ACC operated a joint venture, which is the alternate theory on which the verdict was based. "A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control."[42] The element of mutual control is essential to a joint venture.[43] Because ACC did not exercise any control over the manner in which Davis performed his work, I do not believe that the cab companies can be held liable under a joint venture theory for the injuries caused by Davis.[44]

### Case No. A07A1786

3. In the cross-appeal, while I agree with the general principles of law espoused in Division 3, I dissent from the majority's reversal of the judgment and grant of a new trial to Parham on his RICO claim. I would dismiss the cross-appeal because I do not believe that the verdict on the personal injury claim is supportable as a matter of law.

I am authorized to state that Presiding Judge Johnson joins in this dissent.

DECIDED MARCH 21, 2008 —
RECONSIDERATION DENIED APRIL 11, 2008 — 

---

[40] 227 Ga. App. 66, 67 (2) (488 SE2d 88) (1997).

[41] (Punctuation omitted.) Id. at 68-69 (2).

[42] (Punctuation and footnote omitted.) *Rossi v. Oxley*, 269 Ga. 82 (1) (495 SE2d 39) (1998).

[43] Id. at 83 (1). See also *Kitchens v. Brusman*, 280 Ga. App. 163, 167 (3) (633 SE2d 585) (2006).

[44] See *Kitchens*, supra.

*Sidney L. Moore, Jr.*, for appellants.
*Charles A. Mathis, Jr.*, for appellee.