A94A1295. LOUDERMILK ENTERPRISES, INC. v. HURTIG.
(449 SE2d 141)

ANDREWS, Judge.

Hurtig sued Loudermilk Enterprises, Inc. d/b/a Buckhead Safety Cab ("Loudermilk"), claiming that the driver of a Buckhead Safety Cab negligently caused an automobile accident in which Hurtig was injured. Hurtig alleged that the driver of a Buckhead Safety Cab negligently pulled out in front of her car, causing her to swerve and collide with another vehicle, and that the taxicab driver drove away from the scene of the accident without stopping.

Hurtig claims Loudermilk is responsible for the damages she incurred in the accident because: (1) the taxicab driver was employed as a servant of Loudermilk, which is responsible for the damages caused by its servant on the basis of respondeat superior, or (2) if the taxicab driver was employed as an independent contractor rather than a Loudermilk servant, Loudermilk is liable for the negligence of its independent contractor driver pursuant to OCGA § 51-2-5 (4) because the driver wrongfully left the scene of the accident in violation of a duty to stop imposed by OCGA § 40-6-270. Loudermilk claims that, even if there was evidence the accident was caused by one of its drivers operating a Buckhead Safety Cab, it is not liable because the driver was an independent contractor, not a servant of Loudermilk, and Loudermilk is not responsible for the negligent conduct of its driver employed as an independent contractor.

A jury rendered a verdict against Loudermilk for damages in the amount of $74,046.61. Loudermilk appeals, claiming the trial court erred by denying its motion for a directed verdict made on the basis that the evidence showed the driver was an independent contractor and that it was not responsible for the driver's negligent conduct.

The original common law rule that an employer is not liable for the torts of an independent contractor is codified in Georgia in OCGA § 51-2-4 which provides: "An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." *Peachtree-Cain Co. v. McBee,* 254 Ga. 91 (327 SE2d 188) (1985). "The reason for the rule is that since the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk. . . ." (Citations and punctuation omitted.) Id. at 91. "The chief test to be applied in determining whether a person is employed as a servant or as an independent contractor has long been and continues to be whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract. With [respect] to the 'independent business' requirement set forth in the code section, the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego." (Citations and punctuation omitted.) *Slater v. Canal Wood Corp. of Augusta,* 178 Ga. App. 877, 878 (345 SE2d 71) (1986).

Evidence was presented by an eyewitness to the accident that a Buckhead Safety Cab negligently caused the accident at issue and that the taxicab driver drove away from the scene of the accident without stopping. Neither the specific taxicab involved nor the identity of the taxicab driver could be determined after the accident. Other evidence showed that every Buckhead Safety Cab driver signed a written agreement with Loudermilk providing that the driver's relationship with Loudermilk was that of an independent contractor. Some drivers owned their own taxicabs and others leased a taxicab owned and maintained by Loudermilk. In either case, the driver paid a fixed fee to Loudermilk, which provided communications services by taking telephone calls from taxicab customers and relaying the calls by radio to the taxicab drivers. The taxicab drivers retained the fares they collected from customers and did not share their profits or losses with Loudermilk. The president of Loudermilk testified that the time, manner and method of operating the taxicabs was vested with the individual drivers, who were not required to work and were not restricted to any particular time or location.

"Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control." (Citations and punctuation omitted.) *McGuire*

*v. Ford Motor Credit Co.*, 162 Ga. App. 312, 313 (290 SE2d 487) (1982). Moreover, because Loudermilk denied that it had any agency relationship with its taxicab drivers, Hurtig was required to come forward with evidence sufficient to sustain a verdict establishing such a relationship. *Bennett v. Miller*, 188 Ga. App. 72, 74 (371 SE2d 903) (1988); *Johnson v. City Wide Cab*, 205 Ga. App. 502, 504 (422 SE2d 912) (1992).

Hurtig produced no evidence sufficient to support a verdict that there was an employer-servant relationship between Loudermilk and any of its taxicab drivers who could have caused the accident. Standing alone, the testimony identifying the vehicle which caused the accident as a Buckhead Safety Cab was insufficient to raise an inference that there was an employer-servant relationship between Loudermilk and the driver of the taxicab. Compare *Harper v. Samples*, 164 Ga. App. 511, 512 (298 SE2d 29) (1982). Evidence of lettering on the side of the vehicle reading "Buckhead Safety Cab" and evidence that the drivers of Buckhead Safety Cabs would provide a receipt for charges bearing the company name was also insufficient to raise a presumption of an agency relationship between the drivers and Loudermilk. *Aetna Cas. &c. Co. v. Malcom*, 149 Ga. App. 754, 755 (256 SE2d 117) (1979). "Generally[,] there are two circumstances to be proven in order to raise the necessary inference that the vehicle was being operated in the master's business and within the scope of the employer's employment, viz., ownership of the vehicle by the master and that the driver was the owner's servant." *Clark v. Atlanta Veterans Transp.*, 113 Ga. App. 531, 533-534 (148 SE2d 921) (1966). Even if there had been proof that the driver who caused the accident drove a Buckhead Safety Cab owned by Loudermilk, the evidence was insufficient in this case to show an agency relationship between the driver and Loudermilk because of uncontroverted evidence that, if the taxicab was owned by Loudermilk, it was leased to the driver, who retained control over its operation. *Red Top Cab Co. v. Hyder*, 130 Ga. App. 870 (204 SE2d 814) (1974); *Brunson v. Valley Coaches*, 173 Ga. App. 667, 668 (327 SE2d 758) (1985). Moreover, we find no evidence sufficient to support a claim that an implied or apparent agency existed between Loudermilk and its taxicab drivers. See *Howard v. St. Paul Fire &c. Ins. Co.*, 180 Ga. App. 802, 804 (350 SE2d 776) (1986); *Jackson v. Braddy*, 186 Ga. App. 284, 285 (367 SE2d 96) (1988).

There was no evidence that Loudermilk assumed control over any driver's operation of a taxicab. Evidence that Loudermilk criticized some drivers based on complaints received from customers and terminated some drivers for this reason is not the equivalent of assuming control over the means and method of the work. "It is well recognized that merely taking steps to see that the contractor carries out his agreement, by supervision of the intermediate results ob-

tained, or reserving the right of dismissal on grounds of incompetence, is not such interference and assumption of control as will render the employer liable." (Citations and punctuation omitted.) *Slater*, supra at 881.

Hurtig contends that, even if the driver of the taxicab was an independent contractor, Loudermilk remained liable for the driver's negligence under an exception to the general rule that employers are not liable for the torts of an independent contractor. The exception relied upon by Hurtig is set forth in OCGA § 51-2-5 (4) which provides that: "An employer is liable for the negligence of a contractor . . . [i]f the wrongful act is [a] violation of a duty imposed by statute." Hurtig asserts that, since the taxicab driver wrongfully left the scene of the accident in violation of a duty to stop at the accident scene imposed by OCGA § 40-6-270, Loudermilk is liable for the negligence of its independent contractor driver.

In the first place, Hurtig's damage claim in this case arose from the driver's negligent operation of the taxicab just prior to the accident, not from the taxicab driver's violation of OCGA § 40-6-270 by leaving the scene after the accident occurred. Secondly, even if the negligence of the driver which caused the accident and resulting damages violated a statutory duty imposed by the applicable rules of the road, this was a statutory duty imposed on the driver, not on Loudermilk, so the exception set forth in OCGA § 51-2-5 (4) does not apply. *Atlantic &c. R. Co. v. Kimberly*, 87 Ga. 161, 167 (13 SE 277) (1891); *Tanner v. USA Today*, 179 Ga. App. 722, 723 (347 SE2d 690) (1986).

Under OCGA § 9-11-50 (a), "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." On appeal, the standard of review of the trial court's denial of a motion for a directed verdict is the "any evidence" standard. *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821 (354 SE2d 6) (1987). Since Hurtig produced no evidence sufficient to rebut evidence showing the existence of an independent contractor relationship between Loudermilk and its taxicab drivers, the evidence demanded a verdict in favor of Loudermilk and the trial court erred by denying Loudermilk's motion for a directed verdict.

*Judgment reversed. Beasley, P. J., concurs in the judgment only. Johnson, J., concurs specially.*

JOHNSON, Judge, concurring specially.

I concur in the majority conclusion that the trial court erred in denying the motion for a directed verdict of Loudermilk Enterprises, Inc. d/b/a Buckhead Safety Cab. I write separately because I strongly disagree with a portion of the majority's rationale in reaching that conclusion.

Like the majority, I conclude there is not enough evidence establishing that the vehicle which caused the accident is a Loudermilk taxicab. "We have held in very similar factual situations that plaintiff's evidence as to the type of [vehicle] marked with a distinctive insignia was insufficient to authorize inferences of ownership of the [vehicle]; or that it was being operated by an agent or employee of defendant in the course of his employment. [Cits.]" *Burns v. United Parcel Svc.*, 135 Ga. App. 890 (219 SE2d 624) (1975); see *Clark v. Atlanta Veterans Transp.*, 113 Ga. App. 531, 533 (148 SE2d 921) (1966). In the instant case, Hurtig presented no evidence identifying a specific taxicab or driver, but instead relied on two witness' testimony that the vehicle in question was marked with Loudermilk's logo and a third witness' testimony that the vehicle appeared to be a taxicab. This evidence is insufficient to authorize the inference that Loudermilk owns the vehicle or that a Loudermilk agent was operating it. See *Johnson v. City Wide Cab*, 205 Ga. App. 502, 504 (2) (422 SE2d 912) (1992); *Harper v. Samples*, 164 Ga. App. 511, 512 (1) (298 SE2d 29) (1982). I therefore agree with the majority that the trial court erred in denying Loudermilk's motion for a directed verdict.

Unlike the majority, however, I do not believe that even if Hurtig had overcome this deficiency in her proof, Loudermilk would still be entitled to a directed verdict. I strongly disagree with the majority's reasoning that Loudermilk is insulated from liability because all of its drivers are independent contractors, rather than employees of the company. "Under OCGA § 51-2-4, an employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer. The chief test to be applied in determining whether a person is employed as a servant or as an independent contractor has long been and continues to be whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract. With regard to the independent business requirement set forth in the code section, the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego." (Citations and punctuation omitted.) *Slater v. Canal Wood Corp.*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986).

Here, the jury heard evidence that Loudermilk lists its taxi service in the telephone directory under the Buckhead Safety Cab name; that customers who call that telephone number reach dispatchers who answer with the Buckhead Safety Cab name; that Loudermilk provides its dispatch service only to Buckhead Safety Cab drivers, not other company's drivers; that the taxicabs are marked with the dis-

tinctive Buckhead Safety Cab logo and colors; that customer receipts bear the company name; that Loudermilk drivers collect sales tax on behalf of the company, not themselves; that Loudermilk handles customer complaints about its drivers; that Loudermilk has the authority to terminate a driver for violating company policy and that Loudermilk makes employment decisions based on how the drivers' conduct affects the company's public image. All of this evidence creates a jury question as to whether the taxicab drivers who work for Loudermilk do not have a bona fide existence apart from Loudermilk, but function merely as Loudermilk's alter ego.

Moreover, the jury could have found that Loudermilk's claim that it does not share in the profits of its drivers is disingenuous. All of the drivers pay a fixed fee to Loudermilk, regardless of the number of customers the driver has. This payment is Loudermilk's share of the drivers' profits and calling it a fee is mere semantics. In truth, this arrangement allows Loudermilk to share in the drivers' customer fares without being exposed to the drivers' losses when they have few customers.

Similarly, the jury might have found Loudermilk's claim that it has absolutely no control over when its drivers work to be specious. If this were truly the case, it is hard to imagine how the taxicab service can function. Loudermilk has only 38 taxicabs at its disposal. With this small number, there must be times when most or even all of the so-called independent contractor drivers decide on their own not to work. If Loudermilk truly lacks any ability to control when drivers will work, it could not possibly guarantee from day to day that taxicabs will be available when customers call requesting service. For the foregoing reasons, I disagree with the majority's conclusion that Loudermilk is insulated from liability because its drivers are independent contractors.

"Although the issue of apparent agency is perhaps more likely to arise in the context of contractual or commercial transactions, there would appear to be no question that an apparent agency relationship may also give rise to tort liability where it can be shown that the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency. The Restatement (2d) of Agency, § 267, provides: 'One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.' [Cit.]" *Brown v. Coastal Emergency Svcs.*, 181 Ga. App. 893, 897 (3) (354 SE2d 632) (1987). As shown by the aforementioned evidence in the instant case, Loudermilk expressly represents to the public that it owns taxicabs bearing its distinctive logo and that the drivers of those

cabs are Loudermilk employees. Hurtig's injury, however, did not occur because she justifiably relied on this apparent agency and therefore the apparent agency theory would not defeat Loudermilk's directed verdict motion. Even though this theory is not applicable to the peculiar facts of the instant case, I note it because I believe in many other taxicab cases, especially those involving injured passengers, this theory would provide another basis for disregarding the claim that taxicab drivers are independent contractors. In many instances, passengers undoubtedly choose to ride in cabs apparently owned and operated by established companies because they assume such cabs are safer and more reliable than cabs wholly owned and operated by individual drivers.

I recognize the majority's position is supported by prior opinions from this court and current regulations on the taxicab industry. See, e.g., *Brunson v. Valley Coaches*, 173 Ga. App. 667 (327 SE2d 758) (1985); *Red Top Cab Co. v. Hyder*, 130 Ga. App. 870 (204 SE2d 814) (1974). I invite the legislature and local governments charged with regulating the taxicab industry to reexamine their policies in view of the gaping holes which exist with regard to the duty of taxicab companies to compensate innocent citizens who are injured as a result of a taxi driver's negligence. In my opinion, the public is entitled to greater protection than is currently afforded under circumstances such as those in this case, as well as in all other cases in which citizens are passengers in taxicabs or confront taxicabs on public streets.

The general public should be able to assume that a company whose logo appears on taxicabs actually owns and operates the cabs, has them properly insured and stands behind the competency of its drivers. Unfortunately, as the instant case demonstrates, neither persons riding as passengers in these taxicabs nor other persons encountering them on the road can make such assumptions. Under the current law of Georgia, one who believes she is riding in an established taxicab company's vehicle, or one who is involved in an accident involving one of these taxicabs, apparently must instead hope the driver alone is responsible, reliable, and insured, while the company named on the cab remains insulated from any possible responsibility because that driver is deemed an independent contractor. This misleading state of the law cries out for reform.

Regulators should require that taxicab companies, as a precondition to being licensed to operate in the community, be co-responsible with their independent contractor drivers for assuring that all taxicabs operating under their business name and logo are fully covered by insurance. In circumstances where these companies fail to provide such coverage or to take whatever steps are necessary to insure that their independent contractor/driver has provided such coverage, they should be jointly and severally liable to persons suffering injury as a

result of their driver's negligence. Furthermore, in cases such as the instant case, where it is undisputed that their driver caused the accident though he was not physically involved and did not stop to be identified, the burden should be on the company, not the plaintiff, to either bring the driver into the litigation or be independently liable to compensate the plaintiff for her injuries.

Local government regulatory agencies are simply not meeting their obligations to the public when they allow the type of independent contractor arrangement commonly employed by taxicab companies to serve as a means for those companies to avoid any liability to the victims of the negligence of their drivers while enjoying all the benefits and the profits of operating their business in the community. It is bad policy, and it is bad law. If local governments are unequal to the task, perhaps it is time for the state to require uniform regulation . within its borders and to require compliance with certain standards from local governments. This court is powerless to change the situation, but we fail in our own obligation if we do not raise the questions which call this problem to the attention of those who are in a position to accomplish the reform so desperately needed.

DECIDED OCTOBER 4, 1994.

*Parkerson & Shelfer, I. J. Parkerson,* for appellant.
*Snellings & Ferguson, Stanley T. Snellings, Robert G. Aitkens,* for appellee.