## A08A1624. LOPEZ et al. v. EL PALMAR TAXI, INC.

(676 SE2d 460)

PHIPPS, Judge.

Maria Lopez, individually and on behalf of her minor children, sued El Palmar Taxi, Inc. for negligence, seeking to recover for injuries she and her children sustained while riding in a taxi displaying the El Palmar logo. Following discovery, El Palmar moved for summary judgment, claiming that the taxi driver, Mario Julaju, was an independent contractor and that it was not responsible for his actions. The trial court granted El Palmar's motion on that basis, and Lopez appeals. We agree with the trial court that El Palmar's liability cannot be established under the theory that Julaju was El Palmar's employee. Lopez also opposed the summary judgment motion based on an apparent agency between El Palmar and Julaju. Because El Palmar's liability might be established under that theory, summary judgment was inappropriate on Lopez's negligence claim. Thus, we reverse.

To prevail on summary judgment, the moving party must show that no genuine issue of material fact exists and that the undisputed facts, viewed in the light most favorable to the nonmoving party, require judgment as a matter of law.[1] We review the grant of summary judgment de novo.[2]

The evidence pertinent to this appeal showed that Julaju drove a taxi on a part-time basis, usually only on Sundays and sometimes on Mondays. He worked an unrelated job on the remaining days of the week. When Julaju applied to work as a taxi driver, El Palmar gave him an independent contractor agreement to sign. He read it and printed his name where he was instructed. Julaju was also given certain rules to follow — dress neatly, do not allow smoking in the car, do not allow passengers in front unless absolutely necessary and ask the passengers to wear their seat belts. All cars driven for El Palmar had to be white and display the El Palmar logo. An El Palmar representative testified that these rules, including the car color and required logo, were imposed by the City of Gainesville. Julaju testified that he did not know what rules the city imposed, other than a requirement that he obtain a taxi license. Julaju obtained his taxi license from the city by filling out an application and giving it and the applicable fee to El Palmar.

Julaju testified that when he was driving a taxi, he did not have a set schedule and could work when he wanted and for as long as he wanted. While working, he drove either a car provided by El Palmar

---

[1] *McLeod v. Blase*, 290 Ga. App. 337 (659 SE2d 727) (2008).

[2] Id.

or a car owned by another taxi driver. To obtain a fare from El Palmar, Julaju would call the office to let them know he was working and then wait for them to give him an address to pick someone up. While he was waiting, Julaju was free to look for his own fares. He was supposed to let El Palmar know if he did this, but Julaju testified that many times drivers did not do so because they wanted to keep their place in line for a fare from El Palmar. He was not required to take any fare offered by El Palmar, but would lose his place in line if he refused.

Julaju testified that if he borrowed a car from El Palmar, he split his fares with the company.[3] If he drove another taxi owner's car, he split his fares with the owner and the owner paid El Palmar the fee to be on the dispatch list. Car owners were required to maintain their own cars and drivers were responsible for the gas. To insure the cars, El Palmar collected premiums from the car owners and sent them to the insurance company.

On the morning of August 9, 2004, Julaju informed El Palmar that he was available to work. El Palmar provided his first fare — picking up Lopez and her children. While Julaju was driving them to their destination, his taxi collided with a truck. Julaju was driving a car owned by another taxi driver, not El Palmar. El Palmar's insurance did not cover the injuries Julaju sustained in the collision.

Lopez claims that she hired El Palmar to transport her and her children and that its negligence caused the collision that resulted in their injuries. She argues that the trial court erred in granting El Palmar's motion for summary judgment because: (1) El Palmar admitted in its initial answer that Lopez had hired it to transport her and her children; and (2) genuine issues of material fact remain regarding whether Julaju was an El Palmar employee.

1. In the complaint, Lopez alleged that she, accompanied by her children, hired El Palmar to transport them safely to their destination. In its initial answer, El Palmar admitted this allegation. In its amended answer, El Palmar denied this allegation and stated that Lopez had hired an independent contractor for transportation, not El Palmar. Lopez argues that El Palmar's initial admission creates a genuine issue of material fact regarding Julaju's employment status that precludes summary judgment.

Lopez relies on OCGA § 24-3-30, which provides that either party may avail itself of allegations or admissions made in the pleadings of the other party, and *Strozier v. Simmons USA Corp.*[4] In

---

[3] An El Palmar representative testified that it did not provide cars to drivers who did not have one; they were required to borrow a car from a taxicab owner. The representative also testified that El Palmar received only a set daily fee and did not split fares with the drivers.

[4] 192 Ga. App. 601 (385 SE2d 677) (1989).

*Strozier*, the defendants admitted that the plaintiff was employed by one company in their answers and a statement of material facts accompanying a motion for summary judgment. They later amended their answers to state that they were joint venturers and employers of plaintiff. The court held that the admissions, even if withdrawn by the amended answers, were still evidence refuting the assertion of a joint enterprise.[5] And relying on the contradictory testimony rule set forth in *Prophecy Corp. v. Charles Rossignol, Inc.,*[6] the *Strozier* court noted that the defendants, "having admitted to the contrary, could not establish as a matter of law that the admission was untrue, but only could raise an issue of fact for a jury to determine."[7]

To the extent that El Palmar's initial answer contained an admission that Julaju was its employee, such admission was "withdrawn by timely amendment, allowing positive evidence of the contrary to overcome it as an admission."[8] In *Jennings*, this court recognized that the *Prophecy* rule does not apply in cases like this one because the pleadings were not verified or otherwise given under oath, "which is necessary for such evidentiary rule to apply."[9]

2. Lopez contends that even if El Palmar's admission does not preclude summary judgment, genuine issues of material fact remain regarding Julaju's employment status.

As a general rule, an employer is not responsible for torts committed by its employee when the employee exercises an independent business and is not subject to the immediate direction and control of the employer.[10] To determine whether the relationship of the parties is that of employer and servant or that of employer and independent contractor, the primary test is whether the employer retains the right to control the time, manner and method of executing the work.[11] "Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control."[12]

---

[5] Id. at 603.

[6] 256 Ga. 27 (343 SE2d 680) (1986) (where testimony of a party-witness is contradictory, testimony will not be construed against the party-witness if a reasonable explanation is offered for the contradiction; the burden is on the party giving testimony to offer a reasonable explanation, and the trial court determines as matter of law whether this has been done).

[7] *Strozier*, supra.

[8] *Jennings v. Psychiatric Health Svcs.*, 258 Ga. App. 111, 112 (573 SE2d 115) (2002).

[9] Id. at 113 (citation omitted).

[10] OCGA § 51-2-4.

[11] *American Assn. of Cab Cos. v. Parham*, 291 Ga. App. 33, 35 (1) (661 SE2d 161) (2008); *Cotton States Mut. Ins. Co. v. Kinzalow*, 280 Ga. App. 397, 399-400 (634 SE2d 172) (2006).

[12] *Kinzalow*, supra at 400 (citation and punctuation omitted).

Here, Julaju executed an agreement with Rebollar Mateo, Inc. d/b/a El Palmar Taxi that he would work for El Palmar as an independent contractor.[13] The only restrictions the contract imposed on him were to comply with all federal, state and local laws requiring business permits, certificates and licenses and to refrain from operating under the company's name in any jurisdiction where the vehicle could not legally be operated.

The evidence does not show that El Palmar assumed control over the time, manner or method of Julaju's work. He was free to work when and for as long as he wanted, he was not required to accept fares from El Palmar, he could obtain his own fares and he could work anywhere the taxi could legally be operated.[14] The fact that the cars he drove displayed the El Palmar logo and the fact that he received calls from El Palmar are not sufficient to create an employer-employee relationship.[15]

This court has also held that "[t]o prove that a taxicab driver was operating a vehicle in the course of the employer's business and within the scope of the driver's employment, the plaintiff must show . . . that the employer owned the vehicle. . . ."[16] Although Julaju testified that he sometimes drove cars that he believed were owned by El Palmar, the car he drove the day of the collision was not owned by El Palmar.[17] Thus, El Palmar cannot be held liable for Julaju's negligence under the theory that Julaju was El Palmar's employee.[18]

3. Lopez contends that El Palmar should be held liable for any negligence by Julaju because it held its drivers out to the public as employees by advertising in the local telephone book and by using business cards bearing the company name, not the driver's names. The trial court did not address this contention, which was raised below in general terms in opposition to El Palmar's motion for summary judgment.

---

[13] Mateo Rebollar, Sr., was the owner of El Palmar Taxi.

[14] See *Metro Taxi v. Brackett*, 273 Ga. App. 122 (614 SE2d 232) (2005) (no employer-employee relationship shown where driver had permit to drive taxi, driver's only obligation was to pay daily fee to drive car, driver was not required to accept calls from company, and company exercised no control over where drivers operated).

[15] See *Red Top Cab Co. v. Hyder*, 130 Ga. App. 870, 871 (204 SE2d 814) (1974) (fact that company relayed messages when someone called for a taxi was not sufficient to show driver was company's agent); *Clark v. Atlanta Veterans Transp.*, 113 Ga. App. 531, 532 (148 SE2d 921) (1966) (proof that cab was lettered "Checker Cab" was not sufficient to show agency).

[16] *Parham*, supra (citation omitted).

[17] See generally *Moss v. Central of Ga. R. Co.*, 135 Ga. App. 904, 906 (219 SE2d 593) (1975) (one may be both a servant and an independent contractor with respect to his employer; question is whether person was servant or independent contractor at time of injury).

[18] See *Metro Taxi*, supra at 123.

Under the doctrine of apparent or ostensible agency, " '[o]ne who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.' "[19] In *Richmond County Hosp. Auth. v. Brown*,[20] the Supreme Court of Georgia considered this example from a comment to Restatement of the Law, Agency, § 267:

> Suppose a cab company holds itself out to the public as a safe, efficient supplier of transportation causing the public, including plaintiff-passenger, to justifiably believe the drivers are its employees. But suppose there is a secret arrangement unknown to the public and this passenger which renders the drivers independent contractors in their relationship to the cab company. If a taxi driver in a single collision negligently injures a passenger and a pedestrian on the street, the passenger may successfully pursue a claim against the cab company on apparent agency principles.[21]

Although the *Richmond County* case applied the doctrine of apparent or ostensible agency to a hospital/doctor arrangement, the doctrine has been considered in a taxicab company/passenger arrangement.[22]

While apparent agency cannot be based upon an assumption or mere belief that an agency relationship exists,[23] "[a] claim of agency may be proved, as any other fact, by circumstantial evidence. . . . The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties."[24]

El Palmar does not dispute that it advertised its taxi services in

---

[19] *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507, 508 (361 SE2d 164) (1987) (citing Restatement of the Law, Agency, § 267).

[20] Supra.

[21] Id. at 509.

[22] See *Cooper v. Olivent*, 271 Ga. App. 563, 565 (2) (610 SE2d 106) (2005) (noting that, under *Richmond County*, taxicab passenger can pursue apparent agency claim against cab company where company represents that its driver is an employee when the driver is actually an independent contractor); *Loudermilk Enterprises v. Hurtig*, 214 Ga. App. 746 (449 SE2d 141) (1994) (evidence was insufficient to support claim that an implied or apparent agency existed between owner of company and its taxicab drivers where plaintiff was not passenger in taxicab, but driver of another vehicle involved in collision caused by taxicab driver) (physical precedent); Id. at 751-752 (apparent agency relationship between taxicab owner and its driver may give rise to tort liability) (Johnson, J., concurring specially).

[23] *Bennett v. Miller*, 188 Ga. App. 72, 74 (371 SE2d 903) (1988).

[24] *Arrington & Blount Ford v. Jinks*, 154 Ga. App. 785, 786-787 (1) (270 SE2d 27) (1980) (citations and punctuation omitted).

the local telephone book. El Palmar also had business cards bearing the company name that were made available to the drivers to give to passengers. Further, El Palmar admitted that Lopez "called El Palmar Taxi seeking a taxi to pick her up" and that a taxi displaying its own El Palmar logo picked up Lopez and her children.[25]

Viewing the undisputed facts in the light most favorable to Lopez as the nonmoving party, we conclude that the existing record does not show that El Palmar was entitled to summary judgment on Lopez's negligence claim under the theory that Julaju was an apparent agent of El Palmar.[26]

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 27, 2009.

*Hulsey, Oliver & Mahar, Jason A. Dean, Jessica M. Mallanda,* for appellants.

*Hamilton, Westby, Antonowich & Anderson, Joseph T. Brasher, Nall & Miller, Michael D. Hostetter,* for appellee.

---

[25] See *Loudermilk Enterprises*, supra at 752 (Johnson, J., concurring specially) ("In many instances, passengers undoubtedly choose to ride in cabs apparently owned and operated by established companies because they assume such cabs are safer and more reliable than cabs wholly owned and operated by individual drivers.").

[26] See generally *Watson v. Howard Johnson Franchise Systems*, 216 Ga. App. 237 (453 SE2d 758) (1995).