**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**April 29, 2022**

# In the Court of Appeals of Georgia

A22A0325. MILLER v. POLK et al.

PHIPPS, Senior Appellate Judge.

In this action for negligence and related claims, plaintiff Calvin Miller, individually and as the administrator of the estate of his deceased wife Jerline Miller, appeals from the trial court's order granting summary judgment to defendants Marcus Polk, M.D., and Anesthesia Consultants of Georgia, LLC d/b/a Oracle Anesthesia of Georgia ("Oracle," and, with Dr. Polk, the "Oracle Defendants").[1] Calvin raises

_____

[1] Dr. Polk is the sole owner and managing member of Oracle. The record also contains references to an entity named "Oracle Anesthesia of Georgia, LLC." During oral argument, when asked to clarify the relationship between Anesthesia Consultants of Georgia and Oracle Anesthesia of Georgia, counsel for the Oracle Defendants responded, "[I]t's a d/b/a; Dr. Polk owns both companies," which "do the same thing." Notably, counsel did not suggest that any distinctions between the entities are relevant to this appeal, and we therefore do not distinguish between the entities in this opinion. To the extent that any distinctions between any entities addressed in (or related to the events giving rising to) this appeal are relevant to any claims raised by

several challenges to the trial court's summary judgment rulings. For the reasons that follow, we reverse the grant of summary judgment on Calvin's claims for negligent credentialing, punitive damages, and attorney fees; otherwise affirm the trial court's judgment; and remand the case to the trial court for further proceedings consistent with this opinion.

This action concerns Jerline's death on August 29, 2019, following complications she experienced the day before during a visit to Pain Care Center of Georgia ("Pain Care") (which is not a party to this action), for a procedure to alleviate back pain. Calvin's claims largely center on the actions of certified registered nurse anesthetist ("CRNA") Cynthia Hamm, who was on the medical team that treated Jerline at Pain Care on the day in question, but also is not a party to this action.

In 2004, 2014, and 2017, Hamm was the subject of disciplinary actions before the Alabama Board of Nursing (the "Alabama Board"). In the 2004 proceeding, the Alabama Board found that: (i) Hamm failed to disclose a 1998 arrest for driving under the influence ("DUI") when she applied to renew her Alabama nursing license

---

Calvin that remain pending following our decision herein, the parties should raise any such issues before the trial court on remand.

in 1998[2]; and (ii) a 2004 pre-employment drug screen returned positive results for cocaine. The parties entered into a consent order under which, as relevant here, Hamm was placed on probation for 24 months. She successfully completed the terms of her probation in 2006.

In the 2014 proceeding, the Alabama Board found that, in 2013, Hamm pleaded guilty to DUI and following too closely and entered a nolo contendere plea to criminal trespass, as a result of which she was denied reinstatement of her Louisiana nursing license in 2013. The parties again entered into a consent order under which Hamm again was placed on probation for 24 months. The terms of her probation contained several requirements regarding prescription drug use, as well as supervision of her work and related reporting requirements. It appears that Hamm was still on probation when the 2017 proceeding took place.

In the 2017 proceeding, the Alabama Board found that Hamm had violated the terms of her 2014 consent order by: (i) obtaining prescriptions from doctors not identified as her primary doctor; (ii) testing positive for a drug that she was not prescribed; and (iii) failing to comply with several work supervision and reporting

---

[2] According to the Alabama Board, Hamm was convicted of the DUI offense the day after she submitted her 1998 renewal application.

3

requirements. The parties again entered into a consent order under which Hamm was placed on probation for 10 months. It appears that Hamm successfully completed the terms of her 2017 probation in March 2018.

As a result of the 2004 and 2014 Alabama Board proceedings, Hamm also was the subject of disciplinary actions before the Georgia Board of Nursing in 2006 and 2016. In the 2006 Georgia proceeding, Hamm entered into a consent order in which she was publically reprimanded. And in the 2016 Georgia proceeding, Hamm again entered into a consent order pursuant to which she was placed on probation, subject to a number of terms and conditions. She successfully completed the terms of that probation on April 18, 2019, approximately four months before Jerline's death.

From 2012 to 2020, Oracle provided anesthesiologists and CRNAs to Pain Care pursuant to a Professional Services Agreement. The Professional Services Agreement explicitly provides that the anesthesiologists and CRNAs whose services were to be provided under the agreement would be acting as "independent contractor[s]." Hamm first began working as a CRNA for Oracle in 2015. Between 2015 and 2019, Oracle assigned Hamm to provide anesthesia services to Pain Care.

The contract between Hamm and Oracle in effect in August 2019 designated Hamm as an "independent contractor" of Oracle.[3]

On August 28, 2019, Jerline was scheduled to undergo a procedure at Pain Care in which Vincent Galan, M.D. (the president of Pain Care, who also is not a party to this action), was to insert a spacer in her spine to alleviate back pain. The medical team for Jerline's procedure included Hamm (who was to administer anesthesia), another nurse, and one or more other assistants. In anticipation of the procedure, Jerline was administered a sedative (to relax or calm her) and a prophylactic antibiotic.

As she was lying face down on the table on which the procedure was to take place, before any anesthesia was administered, Jerline began coughing and had trouble breathing. After the medical team turned Jerline over onto her back, she stopped breathing, and CPR was administered. Because her heart rate was slowing, she was administered atropine, after which her heart rate increased slightly; she also was administered epinephrine due to possible bronchospasms. Also during this time,

_____

[3] A prior contract between Hamm and Oracle in effect between May 2017 and May 2018 identified Hamm as an "employee." (Capitalization omitted.) It is undisputed that the 2017-2018 contract was not in effect at the time of Jerline's August 2019 visit to Pain Care.

Hamm inserted a laryngeal mask airway to help Jerline breathe. Emergency personnel eventually were summoned and transported Jerline to a hospital. She died at the hospital the next day of acute respiratory failure due to cardiorespiratory arrest.

In August 2020 (before the current case began), Calvin, individually and as administrator of Jerline's estate, entered into a "Settlement Agreement and General Release of All Claims" with Dr. Galan, Hamm, and Pain Care (collectively, the "Releasees"), as well as several insurers. Pursuant to the Settlement Agreement, the Releasees and insurers agreed to pay certain sums to Calvin "in full settlement and discharge of all claims against Releasees which are, or might have been, related to" Jerline's death. In October 2020, Calvin (again individually and as administrator of Jerline's estate) sued the Oracle Defendants (along with a third defendant who is not a party to this appeal) for: (i) negligent selection, hiring, training, credentialing, retention, and supervision of Hamm (all defendants); (ii) professional negligence (medical malpractice) (the Oracle Defendants); (iii) imputed/vicarious liability for the alleged negligence of Pain Care's medical staff, including Hamm (the Oracle Defendants); (iv) corporate negligence (all defendants); (v) negligence per se, based on alleged regulatory violations (the Oracle Defendants); (vi) negligent failure to

6

report Hamm's alleged misconduct (the Oracle Defendants); (vii) punitive damages (all defendants); and (viii) attorney fees and expenses of litigation (all defendants).

The Oracle Defendants moved for summary judgment on the claims against them. They argued, in relevant part, that Calvin's vicarious liability claims fail because Hamm was an independent contractor of Oracle or, alternatively, are barred by the Settlement Agreement. They further maintained that: (i) because neither Dr. Polk nor Oracle was a supervising physician during Jerline's August 2019 visit to Pain Care, neither can be liable for any acts or omissions committed at that time; (ii) there is no evidence that the Oracle Defendants negligently credentialed, hired, or retained Hamm; and (iii) Calvin's malpractice claim fails because Dr. Polk had no doctor-patient relationship with Jerline.

The trial court granted the Oracle Defendants' motion for summary judgment on the following grounds: (i) the Settlement Agreement bars Calvin's claims against the Oracle Defendants for vicarious, corporate, and imputed liability; (ii) regardless, those claims also fail because Hamm was an independent contractor of Oracle when Jerline was treated at Pain Care in August 2019; (iii) Calvin's claim for professional negligence against Dr. Polk fails because Dr. Polk had no doctor-patient relationship with Jerline; (iv) Calvin's claim for negligent credentialing fails because there is no

evidence that Hamm was unqualified to provide medical care in August 2019; (v) Calvin's negligent hiring and retention claims fail because there is no evidence that any acts or omissions by Hamm caused Jerline's death; and (vi) Calvin's claims for punitive damages and attorney fees will not lie absent a viable underlying, substantive claim. This appeal followed.

We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *City of St. Marys v. Reed*, 346 Ga. App. 508, 508-509 (816 SE2d 471) (2018). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. at 508; see OCGA § 9-11-56 (c). "[T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008) (citation and punctuation omitted); see OCGA § 9-11-56 (c). If the movants meet this burden, the nonmovant "cannot rest on [his] pleadings, but rather must point to specific evidence giving rise to a triable issue." *Ellison*, 294 Ga. App. at 819 (3) (a) (citation and punctuation omitted); see OCGA § 9-11-56 (e).

1. We first address Calvin's challenge to the trial court's ruling that Hamm was an independent contractor (and not an employee) of Oracle, as resolution of this issue will impact other claims raised by Calvin on appeal. "In general, an employer is not responsible for the torts of its independent contractor." *Whitaker Farms v. Fitzgerald Fruit Farms*, 347 Ga. App. 381, 385 (1) (819 SE2d 666) (2018); see OCGA § 51-2-4 ("An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer."); accord *Lopez v. El Palmar Taxi*, 297 Ga. App. 121, 123 (2) (676 SE2d 460) (2009). Where, as here, "the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true" unless the evidence shows that the employer assumed "the right to control the time, manner and method of executing the work." *Lopez*, 297 Ga. App. at 123 (2) (citation and punctuation omitted). On appeal, Calvin relies on two theories under which, he claims, Hamm may be treated as an employee of Oracle: ratification and violation of a duty imposed by express contract. Neither applies here.

(a) An exception to the general rule that an employer is not responsible for an independent contractor's torts exists "if the employer ratifies the unauthorized wrong

9

of the independent contractor." *Whitaker Farms*, 347 Ga. App. at 385 (1); see OCGA § 51-2-5 (6). Calvin contends that the Oracle Defendants may be held liable for Hamm's alleged negligence because they ratified her wrongful acts by continuing to employ her and allowing her to provide medical treatment after learning that she had violated her probation and engaged in "demonstrable negligence," apparently in the care of another Pain Care patient. Calvin has not, however, identified any record evidence from which a reasonable jury could find that the Oracle Defendants ratified "*the unauthorized wrong*" at issue here — namely, Hamm's allegedly negligent provision of medical care to Jerline in August 2019 — as all of the acts alleged to have been "ratified" occurred before then. *Whitaker Farms*, 347 Ga. App. at 385 (1) (emphasis supplied); see also *Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795, 797 (4) (449 SE2d 128) (1994) ("Where the principal ratifies *the tort* of the agent *after its commission*, the liability of the principal is the same as if he had commanded it, provided the ratification is had with full knowledge on the part of the principal of the manner in which *the tort* was committed.") (citation and punctuation omitted; emphases supplied). This theory of vicarious liability therefore fails.

(b) Calvin alternatively maintains that the Oracle Defendants may be held liable for Hamm's alleged negligence on the ground that such negligence violated a

10

duty imposed by express contract, i.e., the Professional Services Agreement between Pain Care and Oracle. See OCGA § 51-2-5 (3) ("An employer is liable for the negligence of a contractor . . . [i]f the wrongful act is the violation of a duty imposed by express contract upon the employer . . . ."). Under this theory of recovery, however, "the contractual duties under which the employer would be liable for the acts of the independent contractor cannot be enforced by one not a party to the contract." *Kidd v. Dentsply Intl.*, 278 Ga. App. 346, 350 (2) (629 SE2d 58) (2006) (citation and punctuation omitted). Neither Calvin nor Jerline was a party to the Professional Services Agreement. Consequently, this theory of vicarious liability similarly fails.

(c) Without explanation, Calvin also cites OCGA § 51-2-5 (2), which provides, "An employer is liable for the negligence of a contractor . . . [i]f, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed . . . ." But he elaborates no argument as to whether (or, if so, why or how) that provision applies here, and we therefore deem any such claim abandoned. See Court of Appeals Rule 25 (c) (2); *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014) ("It is [the appellant]'s burden, as the party challenging the ruling below, to affirmatively show error from

the record on appeal."); *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and punctuation omitted); *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000) (legal analysis, at a minimum, requires "a discussion of the appropriate law as applied to the relevant facts," and "appellate judges should not be expected to take pilgrimages into records in search of error without the compass of citation and argument") (citation and punctuation omitted).

(d) Calvin does not identify any other theories under which the Oracle Defendants may be held vicariously liable for any alleged wrongdoing by Hamm or any other member of the medical team that treated Jerline at Pain Care in August 2019. Consequently, we affirm the grant of summary judgment to the Oracle Defendants on each of Calvin's imputed or vicarious liability claims.

2. Calvin also challenges the trial court's ruling that the Settlement Agreement bars his claims against the Oracle Defendants for vicarious, corporate, and imputed liability.

(a) Our ruling in Division 1 moots Calvin's challenge to the trial court's ruling as to the effect of the Settlement Agreement on his claims for vicarious or imputed liability.

(b) Calvin's references to corporate liability in his appellate briefs are limited to: (i) a citation to OCGA § 14-2-622 (b) ("Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debt of the corporation except that he may become personally liable by reason of his own acts or conduct."); and (ii) a conclusory assertion that "[a] court cannot limit liability of a corporation owner who had privity or knowledge of specific negligent acts which caused the loss of a life or property." (Punctuation omitted.) As is the case with his reference to OCGA § 51-2-5 (2) (see Division 1 (c)), Calvin elaborates no argument on appeal as to how the facts of this case could give rise to a claim for corporate liability. We therefore deem any such argument abandoned and affirm the trial court's grant of summary judgment to the Oracle Defendants on Calvin's corporate liability claim, pretermitting whether such a claim otherwise potentially could lie under the circumstances presented here. See Court of Appeals Rule 25 (c) (2); *Tolbert*, 296 Ga. at 363 (3); *Brittain*, 329 Ga. App. at 704 (4) (a); *Dixon*, 242 Ga. App. at 266 (4).

13

3. Calvin contends that the trial court erred when it granted summary judgment on his negligent credentialing, hiring, and training claims. As stated above, the trial court concluded that Calvin's negligent credentialing claim fails because there is no evidence that Hamm was unqualified to provide medical care in August 2019 and that his negligent hiring and retention claims fail because there is no evidence that any acts or omissions by Hamm caused Jerline's death. We address each ruling in turn.

(a) *Negligent credentialing.*

(i) A negligent credentialing claim "is an independent cause of action arising out of a health care institution's direct responsibility to its patients to take reasonable steps to ensure that medical care providers are qualified." *Wellstar Health Systems v. Green*, 258 Ga. App. 86, 88 (1) (572 SE2d 731) (2002) (addressing a claim that a health care clinic negligently credentialed a nurse on its staff); accord *Ladner v. Northside Hosp.*, 314 Ga. App. 136, 138, n. 4 (723 SE2d 450) (2012); see also *Sheffield v. Zilis*, 170 Ga. App. 62, 63 (1) (316 SE2d 493) (1984) (a health care institution has a duty to "act *in good faith* and with *reasonable care*" in the selection of medical professionals); *Joiner v. Mitchell County Hosp. Auth.*, 125 Ga. App. 1, 3 (1) (186 SE2d 307) (1971) (a hospital may be liable for its own negligence if it fails to exercise care in determining the professional competency of a physician). Thus,

14

unlike vicarious liability claims based on respondeat superior, negligent credentialing claims are "not dependent on a master-servant relationship." *Wellstar Health Systems*, 258 Ga. App. at 88 (1) (citation and punctuation omitted); accord *McCall v. Henry Med. Center*, 250 Ga. App. 679, 682 (1) (551 SE2d 739) (2001). As with other negligence claims, to prove negligent credentialing, a plaintiff must "show a legally attributable causal connection between the defendant's conduct and the alleged injury." *Ladner*, 314 Ga. App. at 140.

In the trial court, Calvin submitted expert affidavits by two anesthesiologists (Paul Domson, Jr., M.D., and Jay Ellis, Jr., M.D.) and a CRNA (Brent Sommer).[4] Dr. Ellis attested that, during Jerline's visit to Pain Care in August 2019, the failure of the medical team (including Hamm) to "provide adequate oxygenation and ventilation" to Jerline resulted in her cardiac arrest and death. CRNA Sommer similarly attested that, during that visit, Hamm deviated from acceptable standards of care in multiple ways and that, as a result, Jerline was transported to the hospital "with a compromised and inadequate airway and oxygenation" and suffered an "untimely death." Moreover, Dr. Domson attested that: (i) the Oracle Defendants

---

[4] The Oracle Defendants do not raise any evidentiary challenges to Calvin's expert affidavits on appeal.

15

deviated from the standard of care by "fail[ing] to properly credential . . . Hamm and to remove her from service after having knowledge of her professional and mental incompetence" based on Hamm's criminal and disciplinary history; and (ii) the Oracle Defendants' negligent credentialing of Hamm was a "significant contributing cause" of Jerline's death, which would not have occurred if Hamm had not been improperly credentialed by the Oracle Defendants.

Given these expert affidavits — which we must view in a light most favorable to Calvin, see *City of St. Marys*, 346 Ga. App. at 508-509 — the trial court erred when it found that Calvin had offered no evidence (a) that Hamm was unqualified to provide the medical care she rendered to Jerline in August 2019 or (b) of any acts or omissions by Hamm that caused Jerline's death. In that regard, the affidavits also were sufficient to raise disputed factual issues as to whether the Oracle Defendants satisfied their responsibility to take reasonable steps to ensure that Hamm was qualified to render the type of medical care that was required of one in her position. See *Wellstar Health Systems*, 258 Ga. App. at 88 (1).

In addition, Calvin also submitted evidence that, approximately 21 months before Jerline's August 2019 visit to Pain Care, another patient to whom Hamm provided medical care (through her contract with the Oracle Defendants) suffered

16

injuries resulting from oxygenation problems that arose while resuscitative measures were being administered.[5] Evidence regarding injuries to another patient of Hamm in an incident that pre-dated Jerline's August 2019 visit provides further support for Calvin's claim that the Oracle Defendants were on notice of Hamm's alleged deficiencies and thus acted negligently by authorizing Hamm to provide medical care. Consequently, we reverse the trial court's grant of summary judgment to the Oracle Defendants on Calvin's claim for negligent credentialing.

(ii) The Oracle Defendants briefly contend that, by "extinguish[ing]" all claims against Hamm, the Settlement Agreement necessarily extinguished all direct claims against them because any such claims are "derivative" of the underlying negligence claims against Hamm. They cite a single decision in support of that proposition: *Hosp. Auth. of Valdosta/Lowndes County v. Fender*, 342 Ga. App. 13, 23 (2) (802

---

[5] The Oracle Defendants argue that facts regarding Hamm's care of another patient are irrelevant and inadmissible in this proceeding. Notably, however, they point to no trial court ruling on any such issue. And while we express no opinion on the ultimate admissibility of such evidence under the factual and procedural posture that may exist when the trial court may be called upon to decide that issue, it suffices to say that, for purposes of the summary judgment rulings at issue here, evidence that Hamm experienced oxygenation problems with another patient before Jerline's 2019 visit to Pain Care bears on whether the Oracle Defendants satisfied their responsibility to take reasonable steps to ensure that Hamm was qualified to render the type of health care that was required of her position at the time of Jerline's visit. See *Wellstar Health Systems*, 258 Ga. App. at 88 (1).

SE2d 346) (2017), overruled in part by *Quynn v. Hulsey*, 310 Ga. 473, 482 & n. 10 (850 SE2d 725) (2020). Our decision in *Fender*, however, did not hold that a settlement agreement releasing a primary tortfeasor bars all direct claims against other potential tortfeasors that may be derivative of the primary tortfeasor's negligence. See 342 Ga. App. at 23 (2). We rather held that, where an employer "has admitted respondeat superior liability and the plaintiff is not seeking punitive damages" — a situation not present in this case — the employer is entitled to summary judgment on the plaintiff's claims for negligent hiring, training, supervision, and retention, which "are merely duplicative of the respondeat superior claim." Id. (citation and punctuation omitted). Thus, setting aside the fact that our ruling in that regard was overruled in *Quynn*, 310 Ga. at 482 & n. 10, it does not support the Oracle Defendants' position, and we therefore reject their claim that the Settlement Agreement bars Calvin's direct negligence claims against them.

(iii) We note, however, that the parties have not cited, and research has not revealed, any binding precedent clearly addressing whether a negligent credentialing claim may lie against an entity such as Oracle (which, on the current record, does not appear to be a hospital, clinic, or similar medical facility) or its owner. See, e.g., *Hosp. Auth. of Valdosta & Lowndes County v. Meeks*, 285 Ga. 521, 521 (678 SE2d

18

71) (2009) (claim against hospital); *Houston Hospitals v. Reeves*, 356 Ga. App. 50, 51 (846 SE2d 219) (2020) (same); *Ladner*, 314 Ga. App. at 136 (same); *Wellstar Health Systems*, 258 Ga. App. at 86, 88 (1), 91 (3) (claim against corporate health care provider that operated clinic visited by decedent); *McCall*, 250 Ga. App. at 680 (1) (claim against hospital). Because full briefing by the parties and analysis by the trial court would be beneficial to the resolution of this issue, the parties should address it before the trial court on remand.

(b) *Negligent hiring, retention, training, and supervision.*[6]

(i) "Under Georgia law, an employer has a legal duty to exercise ordinary care in the selection of its own employees." *New Star Realty v. Jungang PRI USA*, 346 Ga. App. 548, 561 (1) (c) (i) (816 SE2d 501) (2018) (physical precedent only); see OCGA § 34-7-20 ("The employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency . . . ."); *Doe v. Young Women's Christian Assn. of Greater Atlanta*, 321 Ga. App. 403, 408 (2) (740 SE2d 453) (2013) ("An employer has a duty to exercise ordinary care not to hire or

---

[6] In its order granting summary judgment, the trial court only briefly mentioned Calvin's negligent training claim and did not refer at all to his negligent supervision claim. As discussed below, we address those claims here because their resolution necessarily follows from our other rulings in this decision.

19

retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable that the employee's tendencies could cause the type of harm sustained by the plaintiff.") (citation and punctuation omitted). The torts of negligent hiring and retention, however, do not apply to independent contractors. *O'Dell v. Mahoney*, 324 Ga. App. 360, 367 (4) (750 SE2d 689) (2013); see *Finley v. Lehman*, 218 Ga. App. 789, 791 (2) (463 SE2d 709) (1995) (the tort of negligent hiring does not apply to an independent contractor). Because, as discussed above in Division 1, Calvin has not shown that the trial court erred when it determined that Hamm was an independent contractor, we affirm the grant of summary judgment on his claims for negligent hiring and retention.

(ii) Given that Calvin has not shown that Hamm was the Oracle Defendants' employee, the Oracle Defendants also were entitled to summary judgment on Calvin's claim for negligent training. See *New Star Realty*, 346 Ga. App. at 562 (1) (c) (ii) ("[T]here can be no claim for negligent hiring, training, and supervision of certain individuals where, as here, the defendant was not the employer of those individuals."). And while not explicitly addressed by the trial court, the same is true for Calvin's claim for negligent supervision of Hamm. See id.

20

4. Calvin has abandoned, by failing to elaborate any argument or cite any authority in support of his enumeration of error number 4, his claim that "[t]he trial court erred by granting Defendants[' m]otion for [s]ummary judgment on all claims because OCGA § 51-12-33 requires the jury to consider apportioning a percentage of fault to Defendants as a tortfeasor [sic]." See Court of Appeals Rule 25 (c) (2); *Tolbert*, 296 Ga. at 363 (3); *Brittain*, 329 Ga. App. at 704 (4) (a); *Dixon*, 242 Ga. App. at 266 (4).

5. Calvin has waived, by failing to enumerate as error, any challenge he may have to the trial court's ruling that his claim for professional negligence against Dr. Polk fails due to the absence of a doctor-patient relationship with Jerline. See *Gresham v. Harris*, 349 Ga. App. 134, 138 (1), n. 10 (825 SE2d 516) (2019) (concluding that the appellant waived any claim that the trial court erred in making a certain finding "by failing to enumerate it as an error and provide any supporting argument" on appeal); *Karlsberg v. Hoover*, 142 Ga. App. 590, 594 (236 SE2d 520) (1977) ("[T]his court has held that an appellant is required in its initial brief to file an argument which supports any enumerations of error it does not wish to waive."). We therefore affirm the trial court's ruling on this issue, as well.

6. In its order granting summary judgment, the trial court did not address Calvin's claims for: (i) professional negligence (medical malpractice) against Oracle; (ii) negligence per se, based on alleged regulatory violations against the Oracle Defendants; and (iii) negligent failure to report Hamm's alleged misconduct against the Oracle Defendants. Consequently, those claims — upon which we express no opinion — remain pending before the trial court.

7. Because we reverse the grant of summary judgment on Calvin's negligent credentialing claim, see Division 3 (a), and because several additional claims remain pending, see Division 6, we also reverse the grant of summary judgment on Calvin's claims for punitive damages and attorney fees. The trial court should address those claims after it has disposed of the remaining, underlying, substantive claims.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Doyle, P. J., and Reese, J., concur.*